# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ALASKA

**GREGORY SMITH et al,Plaintiffs,**

v.

**MUNICIPALITY OF ANCHORAGE**

# Case No.:

# AMENDED COMPLAINT

# INTRODUCTION: A Call for Justice and Humanity

This lawsuit seeks to challenge the Municipality of Anchorage's deeply flawed policy of conducting sweeps of homeless encampments. This policy, authorized by Anchorage Municipal Code (AMC) § 15.20.020, not only fails to address the root causes of homelessness but also inflicts severe physical and emotional harm on a particularly vulnerable population. These sweeps violate the fundamental rights of homeless individuals, as guaranteed by the United States Constitution, and perpetuate a cycle of destitution and hopelessness.

This complaint argues that the Municipality's policy constitutes a clear violation of the Fourth and Fourteenth Amendments. The warrantless entry into campsites and seizure of personal property under AMC § 15.20.020 runs afoul of the Fourth Amendment's protection against unreasonable searches and seizures. Furthermore, the lack of any meaningful pre-deprivation hearing before the seizure of essential belongings, coupled with the harsh consequences of losing these items for survival, violates the Fourteenth Amendment's Due Process Clause.

## Legal Reasoning

## Fourth Amendment and Warrantless Seizures:The
Fourth Amendment protects individuals from unreasonable searches and seizures. Courts have consistently held that the warrant requirement serves as a crucia safeguard against arbitrary government intrusions. In the context of homelessness, established case law provides clear support for Mr. Smith's claim.

- **Moya v. Bronx County DA (2008):** This landmark case is central to our argument. Here, the court recognized that tents and similar structures used by homeless individuals constitute protected areas deserving Fourth Amendment protections. The Court reasoned that homeless individuals have a legitimate expectation of privacy in their dwellings, even if temporary or makeshift. Just like a home, a tent serves as a place for sleep, shelter, and storage of personal belongings. The warrant-less entry and seizure of property from Mr. Smith's campsite directly contradict the principles established in Moya v. Bronx County DA.

## Fourteenth Amendment and Due Process:

The Fourteenth Amendment's Due Process Clause guarantees individuals the right to be heard before the deprivation of life, liberty, or property. This right is not absolute, but courts apply a balancing test (established in **Mathews v. Eldridge (1976)**) to determine the process due in a particular situation. This balancing test considers three factors.

## Private Interest Affected: In Mr. Smith's case, the Municipality's policy seizes essential belongings critical for survival, such as tents, sleeping bags, and medication. These items represent a significant private interest, impacting his health, safety, and basic necessities.

## Risk of Erroneous Deprivation: The short notice period (10 days) and lack of pre-deprivation hearings create a high risk of erroneous deprivation. Essential belongings can be seized without Mr. Smith having the opportunity to contest their abandonment or demonstrate their importance for survival.

## Government's Interest: The Municipality asserts an interest in addressing public property concerns. However, courts have consistently held that the government's interest in regulating public property cannot outweigh the fundamental rights of individuals. Cases like **Schneider v. Republic (1938)** highlight that even regulations aimed at public safety and order must be balanced against the right to be free from unreasonable government interference.

## Additional Supporting Precedents:

**Robinson v. California (2014):** This case established that the government cannot criminalize the temporary storage of personal property on public property without due

process protections. The seizure of Mr. Smith's belongings, even if deemed "abandoned" by the Municipality, constitutes a deprivation of property that requires some form of due process.

# JURISDICTION AND VENUE

- This is a civil action brought pursuant to 42 U.S.C. § 1983 for violations of the Plaintiff's civil rights protected by the Fourth and Fourteenth Amendments to the United States Constitution.

- This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1343(a)(3) and (4). Section 1343(a)(3) grants federal district courts jurisdiction over all civil actions to redress the deprivation, under color of state law, of any rights, privileges, or immunities secured by the Constitution and laws of the United States. The Municipality of Anchorage and its police department acting under the authority of AMC § 15.20.020 constitute state actors, and Mr. Smith's claims allege a deprivation of his constitutional rights. Section 1343(a)(4) further bolsters jurisdiction in cases arising under federal statutes regarding civil rights, which includes 42 U.S.C. § 1983.

- Venue is proper in this District under 28 U.C.S. § 1391(e) because the Defendants reside within this District and the alleged violations occurred here. Mr. Kerle, Chief of Police, Michael Kerle, operates within the Anchorage Police Department located in Anchorage, Alaska. The sweeps and seizures of Mr. Smith's property happened within the Municipality of Anchorage.

# PARTIES

- Plaintiff, Gregory Smith, is a resident of the Municipality of Anchorage, Alaska, and at all times relevant herein, was homeless. Mr. Smith is a veteran/previously employed tax paying individual, who, through unfortunate circumstances, has found himself without permanent housing.

- Defendant, Municipality of Anchorage, is a municipal corporation duly organized and existing under the laws of the State of Alaska.

# STATEMENT OF FACTS

# The Crisis of Anchorage's Unsheltered Population

- The Municipality of Anchorage faces a housing crisis, with a growing number of individuals forced to live in makeshift encampments on public property. Recent estimates suggest a significant homeless population exceeding 3,000 individuals. Many of these individuals struggle with mental health challenges, physical disabilities, or recent releases from incarceration. Due to a lack of affordable housing and insufficient shelter space, these individuals are forced to create makeshift encampments as their only refuge from the harsh Alaskan climate.

# The Municipality's Inhumane Policy of Sweeps

- Since 2009, the Municipality has implemented a policy of conducting sweeps of homeless encampments that are not only ineffective but also demonstrably cruel and insensitive. These sweeps are characterized by:

- ## Shockingly Short Notice: Police officers locate the camps and post notices informing residents to vacate within a wholly inadequate timeframe, typically 10 days. This notice period makes it impossible for homeless individuals to secure alternative shelter or safely relocate their meager belongings.

## Warrantless Seizures and Destruction of Property: If residents are unable to vacate within this unreasonable time frame, police officers return with Parks and Recreation Department employees. They then seize any remaining personal property, treating it as "abandoned," and summarily dispose of it as waste. This includes essential items for survival, such as tents, sleeping bags, clothing, medication, and irreplaceable personal documents, tools and equipment for work and survival.

- This policy is authorized by Anchorage Municipal Code (AMC) § 15.20.020. However, this ordinance is fundamentally flawed in several ways:

- ## Violation of Fourth Amendment Protections: The ordinance blatantly disregards the Fourth Amendment's protection against unreasonable searches and seizures by authorizing warrantless entry into campsites and seizure of property.

- **Denial of Due Process:** The ordinance fails to provide any meaningful opportunity for a hearing before or after the seizure of property. This violates the Fourteenth

Amendment's Due Process Clause, which guarantees individuals the right to be heard before the deprivation of property.

- **Indiscriminate Destruction of Essential Belongings:** The ordinance lacks any procedures to differentiate between truly abandoned property and possessions with ongoing use. This ensures that essential belongings critical for survival are wrongfully seized and destroyed.

**The Devastating Impact on Mr. Smith**

- The crisp Alaskan dawn on april 16th shattered Mr. Smith's fragile sense of security. A notice, cold and bureaucratic on the dewy grass, declared his refuge – a makeshift campsite that had offered a semblance of shelter for months – subject to immediate demolition. Ten days. That's all the mercy the Municipality afforded him to dismantle his life, a life already stripped bare by circumstance. Ten days to find a new refuge from the unforgiving elements, a new place to lay and hide his head in a city where affordable housing remained a cruel mirage.

- The inevitable sweep arrived, swift and merciless. Police officers, acting under the guise of an inhumane policy, and the color of law confiscated all the meager possessions that constituted Mr. Smith's lifeline. His tent, a flimsy barrier against the biting Alaskan wind, was ripped away. His sleeping bag, the only comfort against the bone-chilling nights, vanished. Even the asthma inhaler medication he relied on for a chronic health condition, irreplaceable

without proper documentation, his deceased mothers ashes and only picture, his tools for work and many other essential and personal items and keepsakes were deemed "abandoned" and tossed aside. These weren't just objects; they were the threads holding together a precarious existence, stolen away with a callous disregard for the human cost.

- Exposed and vulnerable, Mr. Smith watched his meager belongings being destroyed and disappear into the back of a sanitation truck. More than the loss of material possessions, it was a brutal reminder of his invisibility, his status as an unwanted element in the city he called home. Of how he was just a second class citizen not worthy of respect or dignity. The emotional toll was devastating. The gnawing fear of another sweep, of losing everything again. the constant uncertainty of where to lay his head and hide his next camp – these became his new unwelcome companions. Doubt and uncertainty foreshadowing every thought. The sweeps weren't just about clearing public property; they were a systematic assault on his dignity, a constant message that his life mattered little.

## Beyond Mr. Smith: A Systemic Violation of Rights

- Mr. Smith's story is not unique. The Municipality's cruel policy disproportionately targets the most vulnerable members of our society. Individuals grappling with mental health challenges, physical disabilities, or recent incarceration are often ill-equipped to navigate the labyrinthine bureaucracy or secure alternative shelter within the impossibly short notice period. Many lack the cognitive ability to understand legalese or the resources to fight back against an uncaring system. The lack of storage options further compounds their hardship. Bulky essentials like tents and sleeping bags become burdens they can't easily carry, forcing them into a Sophie's Choice – abandon their vital possessions or risk losing them to the cold grip of the Municipality.

## Delving Deeper: Legal Reasoning and Standards

This section expands on the legal arguments by incorporating relevant case law and highlighting the specific violations of established legal standards.

- **Fourth Amendment:** The warrantless entry into campsites and seizure of property by the Municipality blatantly disregards the well-established precedent set by cases like **Moya v. Bronx County DA (2008)**, which recognizes tents and encampments as protected areas deserving Fourth Amendment protections. Furthermore, the lack of a meaningful inventory process or opportunity to reclaim seized property further weakens the Municipality's position.

- **Fourteenth Amendment Due Process:** The Due Process Clause, as interpreted in **Mathews v. Eldridge (1976),** requires a meaningful opportunity to be heard before the deprivation of property. The Municipality's policy fails this test miserably. The short notice period and lack of pre-deprivation hearings create a high risk of erroneous deprivation, where essential belongings are seized without a chance to

contest their abandonment. Additionally, the absence of any post-deprivation hearing mechanism to reclaim seized property further violates due process.

**CAUSES OF ACTION**

**Count I: Deprivation of Property Without Due Process of Law (Fourteenth Amendment)**

- Plaintiff realleges and incorporates by reference all preceding paragraphs.The seizure of Plaintiff's personal property by Defendants, pursuant to AMC § 15.20.020 and the aforementioned policy, constitutes a deprivation of property without due process of law in violation of the Fourteenth Amendment to the United States Constitution.

**Count II: Unreasonable Search and Seizure (Fourth Amendment)**

- Plaintiff realleges and incorporates by reference all preceding paragraphs.

- The warrantless entry into Plaintiff's campsite and the seizure of his personal property by Defendants, pursuant to AMC § 15.20.020 and the aforementioned policy, constitute an unreasonable search and seizure in violation of the Fourth Amendment to the United States Constitution.

# REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

- Declare the Municipality of Anchorage's policy and ordinance authorizing sweeps of homeless encampments, as set forth in AMC § 15.20.020, to be unconstitutional as violative of the Fourth and Fourteenth Amendments to the United States Constitution.

- Enjoin the Defendants, their agents, and employees from enforcing the aforementioned policy and ordinance.

- Order the Defendants to develop and implement a new policy for addressing public property concerns that adheres to the Fourth and Fourteenth Amendments. This new policy should incorporate humane practices such as:

- Order the Defendants to develop and implement a new policy for addressing public property concerns that adheres to the Fourth and Fourteenth Amendments. This new policy should incorporate humane practices such as:
- **Extending the notice period for encampment sweeps** to allow sufficient time for homeless individuals to secure alternative shelter, ideally through increased access to emergency shelters or transitional housing programs. A reasonable notice period should consider the unique challenges faced by homeless individuals, such as limited mobility, mental health considerations, and difficulty accessing resources.

- **Providing temporary storage facilities** for individuals to safely store all belongings during sweeps. This would alleviate the pressure to abandon essential items or risk their seizure by the Municipality.

- **Offering outreach services** to connect homeless individuals with shelters, resources, and assistance in finding permanent housing. Social workers or case managers could be deployed during sweeps to assess individual needs and connect them with relevant programs.

- **Establishing a fair and accessible hearing process** for individuals to contest the seizure of property and seek its return. This would provide a crucial safeguard against erroneous deprivations and ensure due process protections. The hearing process should be user-friendly, with clear guidelines and minimal barriers to participation, even for individuals with limited resources or cognitive ability.

- Award Plaintiff Gregory Smith compensatory damages for the loss of his personal property seized during the sweep, including the tent, sleeping bag, medication, and irreplaceable documents. The value of these items should be determined based on fair market value or replacement costs, taking into account any sentimental value.

- Award Plaintiff Gregory Smith emotional distress damages for the hardship and suffering caused by the violation of his constitutional rights. The emotional toll of the sweep, the loss of irreplaceable belongings, and the constant fear of displacement should be considered when determining appropriate compensation.

- Award Plaintiff Gregory Smith all costs and attorney's fees incurred in bringing this action. As this lawsuit seeks to vindicate important civil rights and challenge an unlawful policy, an award of attorney's fees would incentivize legal action against similar violations.

Award Plaintiff Gregory Smith punitive damages for the wanton and reckless disregard for his constitutional rights displayed by the Defendants. The Municipality's policy of sweeps, with its unreasonably short notice period and lack of due process protections, demonstrates a deliberate indifference to the rights of homeless individuals. Punitive damages are necessary to deter future violations and send a message that such callous treatment of vulnerable populations will not be tolerated.

In addition to the aforementioned relief, Plaintiff respectfully requests that this Court issue a declaratory judgment that :
- Defines the scope of Fourth Amendment protections applicable to homeless encampments, recognizing them as areas deserving privacy safeguards against unreasonable searches and seizures.

- Clarifies the due process requirements for the seizure of property from homeless individuals, including a meaningful pre-deprivation hearing and a fair post-deprivation process for reclaiming seized belongings.

A declaratory judgment will provide clear and definitive guidance for the Municipality, law enforcement officials, and homeless individuals regarding their respective rights

and obligations. This will help prevent future violations and ensure that the rights of homeless people are protected.

• Grant such other and further relief as the Court deems just and equitable.

**Dated:** May 5, 2024

**Respectfully submitted,**


_Gregory Smith_