EVA R. GARDNER
Municipal Attorney

JOSEPH F. BUSA
Deputy Municipal Attorney

JESSICA B. WILLOUGHBY
Assistant Municipal Attorney
Municipal Attorney's Office
P.O. Box 196650
Anchorage, Alaska 99519-6650

Phone: (907) 343-4545
Fax: (907) 343-4550
Email: uslit@muni.org

Attorneys for Defendant

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| GREGORY SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| MUNICIPALITY OF ANCHORAGE, | ) |
| | ) |
| Defendant. | ) |
| | ) Case No. 3:23-cv-00257 SLG |

**MUNICIPALITY'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT OF ORDER REQUIRING PLAINTIFF TO STATE WHEN ABATEMENT OCCURRED**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES..................................................................................iii

INTRODUCTION AND SUMMARY...................................................................1

BACKGROUND ...................................................................................................2

      A.     The Municipality of Anchorage Abates Prohibited Camps on Public Property, Generally with Prior Notice, Judicial Review, and Property Storage in Appropriate Circumstances..........................................................2

      B.     Plaintiff Challenges the Reasonableness of This Abatement Process under the Fourth and Fourteenth Amendments......................................................7

LEGAL STANDARDS ..........................................................................................9

ARGUMENT .......................................................................................................10

I.     Plaintiff Lacks Standing to Seek Prospective Relief Because He Does Not Plausibly Allege a Certainly Impending Deprivation of Property. .......................10

II.    The Court Should Order Plaintiff to Identify the Date and Year in Which the Alleged Past Abatement Occurred, and the Claim for Retrospective Damages Should Be Dismissed as Untimely If It Occurred before June 10, 2022. ..............12

III.   On the Merits, Plaintiff Fails to State Claims on Which Relief Can Be Granted. . 17

      A.     The Municipality's Reasonable Abatement Procedures Satisfy the Fourth Amendment. .........................................................................................17

      B.     The Municipality's Reasonable Abatement Procedures Satisfy Due Process. .........................................................................................................30

      C.     Punitive Damages Are Not Available Against the Municipality. ...............34

CONCLUSION ....................................................................................................34

Motion to Dismiss
*Smith v. Municipality of Anchorage,* Case No. 3:22-cv-00257-SLG
Page ii of 36

# TABLE OF AUTHORITIES

**Cases**     **Page**

*Abel v. United States,*
    362 U.S. 217 (1960) ................................................................. 19

*Acosta v. City of Salinas,*
    No. 15-cv-05415, 2016 WL 1446781 (N.D. Cal. Apr. 13, 2016) ................................ 25

*Amezquita v. Hernandez-Colon,*
    518 F.2d 8 (1st Cir. 1975) ....................................................... 18

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................ 9, 10

*Chandler v. State Farm Mut. Auto. Ins. Co.,*
    598 F.3d 1115 (9th Cir. 2010) ...................................................... 9

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983) ............................................................... 11

*City of Newport v. Fact Concerts, Inc.,*
    453 U.S. 247 (1981) .............................................................. 34

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) .......................................................... 10, 12

*Crane v. City of Dunsmuir,*
    No. 2:21-cv-22, 2022 WL 159036 (E.D. Cal. Jan. 18, 2022) ....................... 28

*Cobine v. City of Eureka,*
    No. 16-cv-2239, 2016 WL 1730084 (N.D. Cal. May 2, 2016) ...................... 24

*De-Occupy Honolulu v. City & Cnty. of Honolulu,*
    No. 12-cv-668, 2013 WL 2285100 (D. Haw. May 21, 2013) .................. 26, 33, 34

*Engle v. Municipality of Anchorage,*
    No. 3AN-10-7047 CI, 2011 WL 8997466 (Alaska Super. Jan. 04, 2011) .................. 28

Motion to Dismiss
*Smith v. Municipality of Anchorage,* Case No. 3:22-cv-00257-SLG
Page iii of 36

Case 3:23-cv-00257-SLG    Document 20    Filed 01/08/25    Page 3 of 43

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) ................................................... 10

*Hooper v. City of Seattle*,
    No. 17-cv-77, 2017 WL 591112 (W.D. Wash. Feb. 14, 2017) .................................... 26

*Howard v. State*,
    583 P.2d 827 (Alaska 1978) ....................................................... 19

*Jones v. Blanas*,
    393 F.3d 918 (9th Cir. 2004) ...................................................... 14

*Krottner v. Starbucks Corp.*,
    628 F.3d 1139 (9th Cir. 2010) ..................................................... 9

*Lavan v. City of Los Angeles*,
    693 F.3d 1022 (9th Cir. 2012) ....................................... 19, 21, 22, 25, 31, 34

*Leite v. Crane Co.*,
    749 F.3d 1117 (9th Cir. 2014) ..................................................... 9

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) ........................................................... 30-31

*Mayle v. Felix*,
    545 U.S. 644 (2005) ............................................................ 15

*Miralle v. City of Oakland*,
    No. 18-cv-6823, 2018 WL 6199929 (N.D. Cal. Nov. 28, 2018) ................................. 26

*Mitchell v. City of Los Angeles*,
    No. 16-cv-1750, 2016 WL 11519288 (C.D. Cal. Apr. 13, 2016) ............................... 25

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ............................................................ 20

*O'Callaghan v. City of Portland*,
    No. 3:12-cv-00201, 2013 WL 5819097 (D. Or. Oct. 29, 2013) ................................ 26

*Phillips v. City of Cincinnati*,
    479 F. Supp. 3d 611 (S.D. Ohio 2020) .................................................. 25, 26

Motion to Dismiss
*Smith v. Municipality of Anchorage,* Case No. 3:22-cv-00257-SLG
Page iv of 36

*Proctor v. District of Columbia,*
    310 F. Supp. 3d 107 (D.D.C. 2018) ....................................................... 21, 25

*Riverside All of US or None v. City of Riverside,*
    No. 5:23-cv-01536, 2023 WL 7751774 (C.D. Cal. Nov. 14, 2023) ...................... 25, 26

*Russell v. City & Cnty. of Honolulu,*
    No. 13-cv-475, 2013 WL 6222714 (D. Haw. Nov. 29, 2013) ................................... 27

*Smith v. Municipality of Alaska,*
    No. S-18710 (Alaska) (argued May 7, 2024) ............................................. 11

*State v. Tegland,*
    344 P.3d 63 (Or. 2015).................................................................... 18

*Sullivan v. City of Berkeley,*
    No. 17-cv-06051, 2017 WL 4922614 (N.D. Cal. Oct. 31, 2017) ................................ 27

*United States v. Jones,*
    565 U.S. 400 (2012) ..................................................................... 18

*United States v. Jones,*
    707 F.2d 1169 (10th Cir. 1983).......................................................... 20

*United States v. Ruckman,*
    806 F.2d 1471 (10th Cir. 1986).......................................................... 18

*United States v. Sandoval,*
    200 F.3d 659 (9th Cir. 2000)............................................................ 19

*Watters v. Otter,*
    955 F. Supp. 2d 1178 (D. Idaho 2013).................................................... 27

*Yeager v. City of Seattle,*
    No. 2:20-cv-01813, 2020 WL 7398748 (W.D. Wash. Dec. 17, 2020) ........................ 26

*Young v. State,*
    72 P.3d 1250 (Alaska Ct. App. 2003) ...................................................19-20

Motion to Dismiss
*Smith v. Municipality of Anchorage,* Case No. 3:22-cv-00257-SLG
Page v of 36

Case 3:23-cv-00257-SLG    Document 20    Filed 01/08/25    Page 5 of 43

## U.S. Constitution

U.S. Const., amend. IX ................................................................................ 17

U.S. Const., amend. XIV § 1 .................................................................... 30

## Federal Statutes and Rules

42 U.S.C. § 1983 ........................................................................... 8, 14, 34

Fed. R. Civ. P. 12(b)(1) ............................................................................ 9
Fed. R. Civ. P. 12(b)(6) ...................................................................... 9, 17
Fed. R. Civ. P. 12(e) .............................................................................. 13
Fed. R. Civ. P. 15(c)(1) .......................................................................... 15
Fed. R. Civ. P. 15(c)(1)(A) ..................................................................... 16
Fed. R. Civ. P. 15(c)(1)(B) ..................................................................... 15

## State Statutes, Municipal Code, and Municipal Ordinances and Memoranda

Alaska Statutes
    AS 09.10.070(a) ......................................................................... 14, 16
    AS 34.03.260(a)(2) ........................................................................... 20

Alaska R. Civ. P. 15(c) ......................................................................... 16

Anchorage Municipal Code
    AMC 15.20.005 ................................................................................. 22
    AMC 15.20.010 ................................................................................. 22
    AMC 15.20.020A ............................................................................... 22
    AMC 15.20.020B.15 ...................................................................... 2, 23
    AMC 15.20.020B.15.a .................................................................... 3, 32
    AMC 15.20.020B.15.a.v ........................................................................ 3
    AMC 15.20.020B.15.b.i ........................................................................ 5
    AMC 15.20.020B.15.b.ii ....................................................................... 5
    AMC 15.20.020B.15.b.iii ...................................................................... 5
    AMC 15.20.020B.15.b.iv .................................................................. 5, 32
    AMC 15.20.020B.15.b.v ................................................................... 5, 32
    AMC 15.20.020B.15.b.v.(A) .................................................................. 6
    AMC 15.20.020B.15.b.v.(B) ................................................................ 20
    AMC 15.20.020B.15.b.v.(D) ............................................................. 6, 32
    AMC 15.20.020B.15.c ..................................................................... 7, 32

Motion to Dismiss
*Smith v. Municipality of Anchorage,* Case No. 3:22-cv-00257-SLG
Page vi of 36

Case 3:23-cv-00257-SLG    Document 20    Filed 01/08/25    Page 6 of 43

AMC 15.20.020B.15.c.i ............................................................................ 7
AMC 15.20.020B.15.c.iii ........................................................................... 7
AMC 15.20.020B.15.d ........................................................................ 3, 32
AMC 15.20.020B.15.e .............................................................................. 6
AMC 15.20.020B.15.f. ............................................................................ 32
AMC 15.20.020B.15.f.ii ...................................................................... 6, 29
AMC 15.20.020B.15.g ......................................................................... 6, 33
AMC 15.20.020B.15.g.i ............................................................................ 7
AMC 15.20.020B.15.h.iii ..................................................................... 3, 4
AMC 15.20.020B.15.h.iv .......................................................................... 5

Assembly Ordinances (AOs) and Memoranda (AMs and AIMs)
AO 2017-130(S) (Dec. 5, 2017) ......................................................... 23, 24
AO No. 2018-53(S), as amended (June 26, 2018) ...................................... 23
AO 2024-055(S) (May 21, 2024) ............................................................. 2
AIM 194-2024 (Nov. 26, 2024) ............................................................... 4
AM 685-2017 (Sept. 26, 2017) ......................................................... 23, 24

Motion to Dismiss
*Smith v. Municipality of Anchorage,* Case No. 3:22-cv-00257-SLG
Page vii of 36

## INTRODUCTION AND SUMMARY

In this suit, a homeless plaintiff seeks to challenge the constitutionality of the procedures by which the Municipality of Anchorage abates prohibited camps on public property. Those procedures comport with constitutional requirements in all relevant respects. Among other protections, the abatement code requires the Municipality to provide notice of an impending abatement of a prohibited camp on public property—in Plaintiff's case, he received actual notice at least 10 days in advance of abatement—and an opportunity for campers to remove their property from the abatement area before the abatement begins. The abatement procedures also provide an opportunity to seek judicial review, in which case the Municipality may complete the abatement but is required by code to store property pending appeal.

Those reasonable procedures give campers adequate means of retaining their property while also facilitating the vital governmental interest in abating the public nuisance of prohibited camping on public property. Abatement keeps public property, such as parks, trails, and playgrounds, open for public use. It protects public property from accumulations of waste and from environmental degradation. And it protects public health and public safety. No precedent calls the constitutionality of the Municipality's abatement procedures into question. If this Court reaches the merits, it should reject Plaintiff's challenges.

But this Court does not need to address the merits of Plaintiff's claims because those claims fail at the threshold. Plaintiff has no standing to seek forward-looking

remedies regarding speculative, future abatement actions and deprivations of property that he does not plausibly allege are certainly impending. And Plaintiff's claims seeking retrospective damages for property he allegedly lost in a past abatement appear to have been filed outside the applicable statute of limitations. If, in response to the separately filed motion for an order requiring a more definite statement of the claim or an order requiring limited discovery relating to timeliness, Plaintiff confirms those events occurred before June 10, 2022, this Court should dismiss them as untimely.

## BACKGROUND

**A.**    **The Municipality of Anchorage Abates Prohibited Camps on Public Property, Generally with Prior Notice, Judicial Review, and Property Storage in Appropriate Circumstances.**

The Anchorage Municipal Code (AMC) provides that a "prohibited campsite" on public property "is subject to abatement by the [M]unicipality" of Anchorage. AMC 15.20.020B.15.[1] The code requires advance notice of various durations in advance of

---

[1] The Anchorage Municipal Code is available at https://library.municode.com/ak/anchorage/codes/code_of_ordinances (last accessed January 2, 2025). Unless otherwise specified, to enhance readability, citations in this motion to provisions of the sub-section of the code addressing abatement of prohibited camps, AMC 15.20.020B.15, begin with the relevant sub-paragraph (15) and omit the leading information regarding the title, chapter, section, and paragraph of the code (AMC 15.20.020B). Thus, citations in this motion to, e.g., sub-paragraph a of the camp abatement provisions are "15.a."

Assembly Ordinance 2024-055(s), passed on May 21, 2024, amended the camp abatement provision of code in various ways that, at the time of filing this motion, had not yet been codified. That ordinance is available at https://www.muni.org/Lists/AssemblyListDocuments/Attachments/1134378/AO%202024-055(S).pdf. This motion quotes the code as amended by the ordinance.

abatement, an opportunity for judicial review, and property storage in appropriate circumstances where notice is less than ten days or where judicial review is ongoing.

Except in "exigent circumstances posing a serious risk to human life and safety," AMC 15.20.020B.15.h.iii, all abatement requires advance notice, 15.a. "[A] notice of campsite abatement shall be posted on or near each tent, hut, lean-to, or other shelter designated for removal, or, if no structure for shelter exists, a notice shall be affixed in a conspicuous place near the bedding, cooking site, or other personal property designated for removal." 15.a. The posted notice must state, among other things, the location of the prohibited camp on public land, the code provision under which the camp is prohibited, the specific abatement procedure to be used for the prohibited camp, the means by which a camper may appeal to state court and provide the Municipality of notice of an intent to appeal, the consequences of filing such an appeal or intent to appeal (delay of abatement, or storage of property), and the "contact and location information for reclaiming" any stored property. *Id.* Notice shall "[a]lso be given orally to any persons in or upon the prohibited campsite or who identifies oneself as an occupant of the campsite." 15.a.v.

In addition to providing written and oral notice to campers, the code also requires notice be provided to the Anchorage Health Department, community social service agencies, and community councils. 15.d. "The purpose of" such notice is to "encourage and accommodate the transition of campsite occupants to housing and the social service community network." *Id.* In addition to housing services made available by private partners and charities, this year, as in past years, the Municipality has entered into

contracts with multiple providers to operate municipally funded congregate and non-congregate shelters, with food service, as well as a municipally funded warming site. At the time of filing, the Municipality had contracted to ensure the provision of 532 shelter beds per day through this winter. *See* Assembly Informational Memorandum (AIM) 194-2024 (Nov. 26, 2024), *available at* https://www.muni.org/Lists/AssemblyListDocuments/Attachments/1132714/AM%20951-2024.pdf.

When the Municipality is deciding how to abate a particular prohibited campsite or zone of prohibited campsites, the Municipality may choose among several different options provided by code, depending on the duration of advance notice provided to campers. Where the Municipality provides less than 10 days' notice, the Municipality is required to store property removed from a prohibited camp for at least 30 days. And the Municipality is required to store personal property during the pendency of judicial review, even if the Municipality would otherwise be authorized to destroy such property. The available options for camp abatement are:

- *No-notice emergencies, with property storage*: "Where exigent circumstances posing a serious risk to human life and safety exist, the abatement of a campsite may proceed without prior notice," but "[p]ersonal property removed under this paragraph shall be stored … to the extent reasonable and feasible under the circumstances." 15.h.iii.

- *One-hour notice on property already posted as closed, with property storage*: "When the public land where a prohibited campsite is located is

clearly posted with no trespassing signage, no camping signage, or as not being open to the public, including posting of closed hours, the abatement of the campsite may proceed without additional notice, and after the occupants of the prohibited campsite are provided at least one hour to remove their personal property." 15.h.iv. "Personal property removed under this exception may only be disposed of in accordance with," among other things, the provisions of code governing storage of personal property. *Id.*

- *24-hour notice for wildfire danger, with property storage*: "When a municipal burn ban is in effect, the municipality may post a wildfire danger area with notices describing the area in which prohibited campsites may be abated after 24 hours by removal and storage of personal property." 15.b.i.

- *72-hour notice, with property storage*: "The municipality may post a prohibited campsite with a notice stating all personal property not removed within 72 hours of the date and time the notice is posted may be removed and stored." 15.b.iii; *see also* 15.b.ii.

- *10-day notice, without property storage (or with property storage in the event of an appeal to state court)*: The Municipality may post notice on specific prohibited campsites or around a specific geographic zone of prohibited campsites "stating all personal property" at the posted campsite or within the posted zone not removed within 10 days after the notice is posted "may be removed and disposed of as waste." 15.b.iv; 15.b.v. Posted

zones "shall be contiguous, reasonably compact, identifiable areas with boundaries that are recognizable," and "[a]t any one time, the municipality shall post no more than ten zones to be abated." 15.b.v.(D). Notice of a zone abatement "shall be conspicuously posted under the circumstances and describe in detail the zone to be abated," and "[t]he notices shall be within sight of one another and reasonably maintained for the entire notice period." 15.b.v.(A).

Campers at a prohibited campsite or zone for which notice of abatement has been posted may seek judicial review. "A posted notice" is "a final administrative decision and appeals shall be to the [state] superior court within 30 days from the date the notice of campsite abatement is posted." 15.e. If a camper gives the Municipality notice of the camper's intent to appeal before the expiration of the abatement notice period, "the municipality shall not remove the personal property" of the appealing camper "until at least 30 days have passed from the date the notice was first posted," *id.*, unless the Municipality "stores it until either the appeal is withdrawn, settled, or a decision is issued and any subsequent appeal rights expire." 15.f.ii.

After written notice is posted and the prescribed notice period (such as 10 days) expires, and before an abatement commences, campers are given an additional verbal notice that "the campsite is prohibited and to be removed." 15.g. Before property is removed, campers are "given at least 20 minutes to gather their personal property and

disperse from the area." 15.g.i. Municipal employees and contractors then go about carrying out the abatement of the prohibited camp.

Where storage of personal property is required by code, the Municipality must store it for 30 days and post notice "with contact and location information for reclaiming personal property or disclaiming an interest in it." 15.c. "If a person reclaims stored personal property, it shall be released upon payment of an administrative fee not to exceed ten dollars." *Id.* "Junk, litter, garbage, debris, lumber, [and] pallets" are not stored, 15.c.i, but other personal property "in fair and usable condition and readily identifiable as such by persons engaged in removing a prohibited campsite, shall be deemed valuable and eligible for storage," 15.c.iii.

### B. Plaintiff Challenges the Reasonableness of This Abatement Process under the Fourth and Fourteenth Amendments.

Plaintiff Gregory Smith alleges that he "is a resident of the Municipality of Anchorage, Alaska, and at all times relevant herein was homeless." Dkt. 12-1, at 3 (amended complaint). He alleges that on April 16 of an unspecified year, the Municipality posted a 10-day notice of impending abatement of his campsite on public property and then, after the close of the ten-day notice period, carried out the noticed abatement. *Id.* at 5. Plaintiff does not allege that he lacked any other available alternative shelter at the time. *Id.* Plaintiff does not allege that he appealed to state court or notified the Municipality of an intent to appeal. *Id.* Plaintiff does not allege that he attempted but was unable to remove his own property from the posted abatement area before the close

of the 10-day notice period to avoid it being disposed of by the Municipality. *Id.* And Plaintiff does not allege that he attempted to remove his property when the abatement commenced. *Id.* Instead, Plaintiff alleges that he received notice of the abatement, his personal property remained at his posted camp at the end of the abatement period, and the Municipality's employees or contractors disposed of the remaining property as provided for by code. *Id.*

Plaintiff brings this suit under 42 U.S.C. § 1983 against the Municipality, seeking to challenge: (i) the reasonableness under the Fourth Amendment of the 10-day notice procedure for camp abatement, and (ii) the adequacy under of the Due Process Clause of the Fourteenth Amendment of the process afforded to Plaintiff. Dkt. 12-1, at 4, 7. Plaintiff seeks damages for the loss of personal property and emotional distress, as well as punitive damages, for the past alleged abatement. Dkt. 12-1, at 8. And he seeks declaratory and injunctive relief of various kinds relating to any future abatements. Dkt. 12-1, at 7-8.

The Municipality now: (1) moves to dismiss Plaintiffs' claims seeking forward-looking relief for lack of Article III standing; (2) moves for an order requiring Plaintiff to specify the year and approximate date in which the prior alleged abatement occurred and moves to dismiss Plaintiffs' claims seeking retrospective relief as untimely if the prior alleged abatement occurred before June 10, 2022; and (3) moves to dismiss all of Plaintiff's claims for failure to state a claim on which relief can be granted.

## LEGAL STANDARDS

Challenges to a plaintiff's standing "are properly raised in a Rule 12(b)(1) motion to dismiss." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). "The district court resolves a facial attack" on standing under Rule 12(b)(1) "as it would a motion to dismiss under Rule 12(b)(6)" by determining whether the plausible allegations in the complaint, accepted as true, "are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). "The party asserting federal jurisdiction bears the burden of establishing" Article III standing "at every stage of the litigation," *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1141 (9th Cir. 2010), including in a complaint.

Similarly, "[t]o survive a motion to dismiss" for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). In evaluating a motion to dismiss, a Court cannot take as true portions of a complaint that are "[t]hreadbare recitals of the elements of a cause of action" or "mere conclusory statements." *Id.* A complaint must instead flesh out its claims with "factual content that," taken as true for purposes of deciding the motion to dismiss, "allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The allegations in a complaint, accepted as true, must be more than "consistent with" a defendant's liability; they must "plausibly establish" such

liability in light of "judicial experience," "common sense," and other "likely explanations" for the facts alleged. *Id.* at 679, 681.

**ARGUMENT**

**I.     Plaintiff Lacks Standing to Seek Prospective Relief Because He Does Not Plausibly Allege a Certainly Impending Deprivation of Property.**

Plaintiff's claims for prospective relief all fail at the threshold constitutional requirement that Plaintiff plausibly allege a certainly impending deprivation of property in the future. Article III of the U.S. Constitution requires that plaintiffs seeking relief in federal court establish their standing to do so. "To establish Article III standing," a plaintiff "must," among other things, identify an injury that is "concrete, particularized, and actual or imminent." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). The type of injury a plaintiff must establish—past injury, or imminently impending future injury—depends on the type of relief a plaintiff seeks. "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). Accordingly, for forward-looking relief such as declaratory judgments or injunctions, a plaintiff must establish an "imminent" future injury. *Clapper*, 568 U.S. at 409. That requirement "ensure[s] that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly impending*." *Id.* (emphasis in original).

Here, Plaintiff's theory of injury seems to turn on his allegation that on April 16 of an unspecified year the Municipality effectuated an abatement that resulted in some of his

property being thrown away. *See* Dkt. 12-1, at 5 (section titled "The Devastating Impact on Mr. Smith"). But "past [alleged] wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy" regarding speculative future harm. *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983). With respect to the future, Plaintiff has failed to plausibly allege any imminently impending injury as required by *Clapper*.

Plaintiff does not expressly allege that he is still camping on public property within the Municipality of Anchorage and plans to do so indefinitely into the future. Even if his continued camping were to be inferred, Plaintiff does not allege any basis for concluding that his current camp will be imminently subject to a 10-day abatement notice (as opposed to not being imminently noticed for abatement, or being imminently noticed for abatement on a shorter timeline that would require the Municipality to store his property post-abatement). Nor does he allege that, if his current camp were noticed for a 10-day abatement, he would refuse any offer of alternative housing and instead voluntarily choose to remain in the prohibited camp. He does not allege that he would choose to keep his property in the noticed abatement zone rather than remove his possessions to another location not slated for abatement. And he does not allege that he would forgo an appeal (and thus forgo the property storage that comes with appeal). Plaintiff is well aware of the possibility of appealing, as he has an appeal regarding a past abatement currently pending in state court. *See Smith v. Municipality of Alaska*, No. S-18710 (Alaska) (argued May 7, 2024).

In sum, Plaintiff fails to plausibly allege facts that, taken as true at this stage of litigation, would establish the imminently impending destruction of his property following a 10-day abatement notice period without property storage. This Court dismissed Plaintiff's initial complaint for the same deficiency regarding standing to seek injunctive relief. *See* Dkt. 8, at 2. ("Plaintiff failed to demonstrate that he has standing for purposes of seeking a preliminary injunction"). And Plaintiff has failed to remedy that deficiency in the amended complaint. Plaintiff alleges nothing regarding the "highly attenuated chain of possibilities" currently standing between him and any hypothetical, future deprivation of property. *Clapper*, 568 U.S. at 410. Plaintiff's complaint thus does not "satisfy the requirement that threatened injury must be certainly impending," *id.*, to establish Article III standing to pursue forward-looking remedies. Moreover, because a person facing a 10-day abatement notice has options to avoid the destruction of their property (such as by appealing to state court, or by removing their possessions), any destruction of property at the end of a future abatement notice period would be the result of the person's decision not to pursue those options. "[S]elf-inflicted injuries are not fairly traceable to the Government[]" and thus fail to establish standing. *Id.* at 418.

## II.    The Court Should Order Plaintiff to Identify the Date and Year in Which the Alleged Past Abatement Occurred, and the Claim for Retrospective Damages Should Be Dismissed as Untimely If It Occurred before June 10, 2022.

In the amended complaint, Plaintiff seeks retrospective damages based on the allegation that on April 16 of an unspecified year the Municipality effectuated an

abatement that resulted in destruction of his property. *See* Dkt. 12-1, at 5. (In email correspondence with counsel for the Municipality, received shortly before filing, Plaintiff indicated that he is not sure of the date of the abatement and will have to check his files.) The April 16 allegation in the amended complaint may refer to an abatement of Davis Park noticed on April 6, 2022, with the 10-day notice period expiring April 16, 2022. Or it may intend to refer to some other alleged abatement. In a separate motion filed contemporaneously with this motion to dismiss, the Municipality moves for a more definite statement of the pleading to specify the year and approximate date on which this abatement is alleged to have taken place. An alleged abatement that occurred in an unspecified year is "so vague or ambiguous that the [Municipality] cannot reasonably prepare a response" to that portion of the allegations. Fed. R. Civ. P. 12(e). Alternatively, the Municipality moves for an order requiring Plaintiff to supply that information in limited discovery related to timeliness.

Regardless of the mechanism by which the Court requires Plaintiff to supply the information, the Municipality respectfully requests the Court require Plaintiff to identify the year and approximate date on which the events of "[A]pril 16th," alleged on page 5 of his amended complaint, occurred. *See* Dkt. 12-1, at 5 (section titled "The Devastating Impact on Mr. Smith"). The Municipality should know the date and year of those alleged events to facilitate an answer regarding the allegations related to the abatement, to facilitate the discovery and introduction of evidence regarding the abatement (if this case progresses that far), and in order to assert a potential statute-of-limitations defense.

If the Court orders Plaintiff to provide the date and year in which those events are alleged to have occurred, and if Plaintiff responds to that order by alleging that those events occurred before June 10, 2022, this Court should dismiss Plaintiff's claims as untimely. "For actions under 42 U.S.C. § 1983," such as Plaintiff's claims here, "courts apply the forum state's statute of limitations for personal injury actions." *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004). Alaska law requires that a personal injury action be "commenced within two years of the accrual of the cause of action." AS 09.10.070(a). Plaintiff's claims hinge on the alleged destruction of his property during an abatement. Those claims thus accrued on the day Plaintiff alleges his property was destroyed. Those claims would thus have had to have been filed within two years of that abatement date to be timely under the applicable statute of limitations.

It does not appear that Plaintiff's damages claims were timely filed. Plaintiff's initial complaint, filed on November 7, 2023, Dkt. 1, made no claim for damages for any events related to a past abatement. That initial complaint instead alleged only that the Municipality was then getting ready to "conduct … an enforcement action that would violate plaintiff[']s constitution rights" a few days later on November 9, 2023, and sought "declaratory and injunctive relief" until a state court case was resolved. Dkt. 1, at 4. This Court dismissed that initial complaint and gave Plaintiff an opportunity to amend. Dkt. 8, at 11. Plaintiff submitted the amended complaint at issue here on May 22, 2024, Dkt. 12-1, and this Court granted leave on June 10, 2024, for Plaintiff to file the amended complaint out of the time the Court had specified for amending the complaint, Dkt. 13.

That amended complaint, accepted by this Court for filing on June 10, 2024, claimed for the first time in this litigation that the Municipality had violated Plaintiff's rights in a past abatement and sought damages on that basis. Dkt. 12-1, at 5, 8.

In order for Plaintiff's damages claims to have been timely filed within two years of the challenged abatement, that abatement would have had to occur on or after May 22, 2022 (counting from the date of the late submission of the amended complaint), or, more accurately, June 10, 2022 (counting from the date of the order accepting the late-filed amendment and reopening the docket). Accordingly, if the amended complaint seeks damages arising from a past abatement that occurred earlier than June 10, 2022, such the abatement that the amended complaint appears to allege occurred on April 16, 2022, that new claim would be considered timely only if the amended complaint were to "relate[] back to the date of the original" complaint under Federal Rule of Civil Procedure 15(c)(1).

The amended complaint does not relate back to the original complaint. Plaintiff's claim for damages from a past abatement does not "ar[i]se out of the conduct, transaction, or occurrence" at issue in the original complaint because that original complaint involved only an alleged future abatement decision, not a separate, past, and completed abatement. Fed. R. Civ. P. 15(c)(1)(B). "[R]elation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims," and new claims can relate back to previous claims only if there is "but one episode-in-suit." *Mayle v. Felix*, 545 U.S. 644, 659-60 (2005). Two different abatement decisions made at two different

times in two different factual contexts do not form one episode-in-suit or rely on a common core of operative facts—particularly not in cases like this, which this Court has already recognized may be "heavily fact dependent." Dkt. 8, at 9. The only commonality between separate abatement decisions is that they are made pursuant to the same legislative authorization. The Municipality is aware of no precedent applying Rule 15(c) to allow relation back whenever two separate actions are taken pursuant to the same statute or ordinance. Such an application would broaden Rule 15(c) beyond its terms and unduly undermine the finality interests served by statutes of limitations.

Nor does the "law that provides the applicable statute of limitations" here— AS 09.10.070(a)—itself "allow[] relation back" in these circumstances. Fed. R. Civ. P. 15(c)(1)(A). The limitations statute does not itself allow relation back in any circumstances; it simply sets out a two-year limitations period. A separate state civil rule, Alaska Rule of Civil Procedure 15(c), like its analog in the federal civil rules, allows relation back when an amended claim "ar[i]se[s] out of the conduct, transaction or occurrence" at issue in the original complaint. But, as explained above, that condition is not satisfied here.

Accordingly, the new claims seeking damages from a past alleged abatement do not relate back to the original complaint's claims for injunctive relief to prevent a separate alleged abatement. Rule 15(c) thus does not rescue Plaintiff's damages claims from application of the two-year statute of limitations supplied by state law. Accordingly

those claims should be dismissed as untimely if the past abatement is alleged to have occurred before June 10, 2022.

## III. On the Merits, Plaintiff Fails to State Claims on Which Relief Can Be Granted.

If the Court does not dismiss Plaintiff's claims on the threshold grounds of standing and timeliness, this Court should dismiss those claims on the merits because the Municipality's abatement procedures satisfy the requirements of the Fourth and Fourteenth Amendments.

### A. The Municipality's Reasonable Abatement Procedures Satisfy the Fourth Amendment.

The Fourth Amendment to the U.S. Constitution protects against "unreasonable searches and seizures." U.S. Const., amend. IV. Plaintiff claims that the Municipal employees or contractors who carry out an abatement by disposing of property remaining in an area subject to abatement after the expiration of a 10-day notice period "seize" and "search" the property being disposed of, and that such seizures and searches are unreasonable. Dkt. 12-1, at 7. Accepting all of Plaintiff's plausibly alleged factual statements as true, as the Court must at this early stage in the litigation, those claims fail to state a claim on the merits and should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

**1.** *Search.* Plaintiff fails to allege any "search" under either the property or privacy theories of the Fourth Amendment. Under a property theory, as the Supreme Court has explained, the physical invasion of a property interest "alone does not qualify" as a

search "but there must be conjoined with that … an attempt to find something or to obtain information." *United States v. Jones*, 565 U.S. 400, 408 n.5 (2012). And Plaintiff fails to allege at all—much less plausibly allege—that the Municipal employees and contractors who effectuate abatement of a prohibited camp on public property pursuant to the civil nuisance provisions of municipal code are, while they arrange for disposal of property left behind at an abated camp, attempting to obtain any information from the property they are throwing away.

Nor does Plaintiff allege any "search" under the privacy theory of the Fourth Amendment. Courts have "uniformly held that a person has no reasonable expectation of privacy in a temporary structure illegally built on public land, where the person knows that the structure is there without permission and the governmental entity that controls the space has not in some manner acquiesced to the temporary structure." *State v. Tegland*, 344 P.3d 63, 67 (Or. 2015) (quotation marks omitted); *see id.* at 67-68 (surveying cases). Accordingly, "where erecting a structure in the public space is illegal and the person has been so informed and told that the structure must be removed, there is no reasonable expectation of privacy associated with the space." *Id.* at 69 (quotation marks omitted); *accord Amezquita v. Hernandez-Colon*, 518 F.2d 8, 11 (1st Cir. 1975) ("The plaintiffs knew they had no colorable claim to occupy the land" and "had been asked twice by Commonwealth officials to depart voluntarily. That fact alone makes ludicrous any claim that they had a reasonable expectation of privacy."); *United States v. Ruckman*, 806 F.2d 1471, 1473 (10th Cir. 1986) (holding the Fourth Amendment inapplicable because a

camper "was admittedly a trespasser on federal lands," the government had "the power to control [the land's] occupancy and use," and the camper had been given no right of occupancy); *United States v. Sandoval*, 200 F.3d 659, 661 (9th Cir. 2000) (holding that the Fourth Amendment could apply to a camp on federal land where, among other things, the camper may not have been prohibited from camping in that location and where the camper had not been noticed to vacate).

**2.** *Seizure*. Plaintiff also fails to plausibly allege any seizure of a protected property interest. The Ninth Circuit has held that "seizing and immediately destroying," without notice, the "*unabandoned* personal possessions" of homeless individuals "temporarily left on public" property "meaningfully interfere[s] with" the individuals' "possessory interests in that property,' and "[n]o more is necessary to trigger the Fourth Amendment's reasonableness requirement." *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1024, 1030 (9th Cir. 2012) (emphasis added). On the other hand, "[t]here can be nothing unlawful in the Government's appropriation of … *abandoned* property." *Abel v. United States*, 362 U.S. 217, 241 (1960) (emphasis added).

The Municipality could reasonably treat Plaintiff's property left behind during an abatement as abandoned. In Alaska, "[a]bandonment of property is the voluntary relinquishment of a thing by its owner coupled with his intention to terminate ownership, possession and control of it." *Howard v. State*, 583 P.2d 827, 832 (Alaska 1978). Abandonment can be accomplished by, among things, leaving property "in a public place where anyone might discover and take possession of the property." *Young v. State*, 72

P.3d 1250, 1253, 1254 (Alaska Ct. App. 2003); *cf. United States v. Jones*, 707 F.2d 1169, 1172 (10th Cir. 1983) (finding that suspect abandoned a satchel by leaving it in a publicly accessible space during a police chase because "his ability to recover the satchel depended entirely upon fate and the absence of inquisitive (and acquisitive) passers-by"). Property can also be deemed abandoned by leaving it on property without permission for a certain amount of time. An Alaska statute provides, for example, that personal property left by a former renter on the real property of a landlord may be deemed abandoned and destroyed after the expiration of a 15-day notice period. AS 34.03.260(a)(2).

Here, Plaintiff alleges that he received at least 10-days advance notice of impending abatement, knew the consequences of leaving his property in the abatement area after the close of the notice period (destruction of the property as waste), and nonetheless chose to keep his belongings on public property and thus subject them to destruction. Dkt. 12-1, at 4-5; AMC 15.20.020B.15.b.v.(B) ("At the expiration of the notice period any personal property in the zone may be disposed of as waste."). Under these circumstances, the Municipality may reasonably treat Plaintiff's property as having been abandoned for purposes of the Fourth and Fourteenth Amendment. Plaintiff alleges no facts supporting a conclusion that the notice he received was not "reasonably calculated, under all the circumstances, to apprise [him] of the pendency of the [abatement] and afford [him] an opportunity" to save his property. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Plaintiff fails to plausibly allege that any conditions made him unable to obtain shelter elsewhere, remove his own

Motion to Dismiss
*Smith v. Municipality of Anchorage,* Case No. 3:22-cv-00257-SLG
Page 20 of 36

property within the notice period, or appeal (and thus trigger storage of his property pending appeal).

Under these circumstances, where Plaintiff has chosen to store his belongings on public property subject to noticed abatement (apparently permanently) despite advance notice and adequate opportunity to remove his own property, this Court could reasonably conclude that the Municipality is not alleged to have interfered with Plaintiff's possessory interests in the property (and thus did not seize his property within the meaning of the Fourth Amendment or the Due Process Clause) because Plaintiff had abandoned that property. *See Proctor v. District of Columbia*, 310 F. Supp. 3d 107, 114 (D.D.C. 2018) ("Ms. Braxton's tent and other property appear to have been destroyed when Ms. Braxton walked away from it at the beginning of a cleanup, despite having more than two-weeks' notice that the cleanup would take place.").

The Ninth Circuit declined in *Lavan* to identify any "constitutionally-protected property right to leave possessions unattended on public" property *indefinitely*. 693 F.3d at 1031. Plaintiff does not plausibly allege that 10-day notice before the destruction of remaining property as abandoned is constitutionally inadequate as applied to his circumstances. And he does not specify what longer notice period, if any, would have been required, in his view, before his property could be deemed abandoned and destroyed. He thus does not plausibly allege any interference with a protected property interest within the meaning of the Fourth and Fourteenth Amendments.

**3.** *Reasonableness.* In any event, even if Plaintiff had not abandoned his property and, and even if abatement of that property constituted a seizure within the meaning of the Fourth Amendment, "[t]he question then becomes whether the [Municipality], in seizing [Plaintiff's] property, acted reasonably under the Fourth Amendment." *Lavan*, 693 F.3d at 1030 (quotation marks omitted). Assessing the reasonableness of the Municipality's abatement action requires the Court to "balance[] the invasion of [Plaintiff's] possessory interests in [his] personal belongings against the [Municipality's] reasons for taking the property." *Id.* Applying that test here, the Municipality's abatement procedures are reasonable, and this Court can uphold the challenged portion of the Municipality's abatement code on that basis.

Abatement of prohibited camping on public property—such as parks, playgrounds, school grounds, trails, sidewalks, roads, other rights-of-way, and land set aside for other purposes—serves vital public interests. The abatement procedures at issue here were enacted by the Anchorage Assembly in the public-nuisance chapter of the title of the Anchorage Municipal Code addressing environmental protection. That chapter prohibits any "public nuisance" that, among other things, "injures or endangers the safety, health, comfort or repose of the public," AMC 15.20.020A; AMC 15.20.010, and it provides mechanisms for the abatement of such nuisances "to ensure that public nuisances are prevented, discontinued, and abated in a timely manner and do not reoccur," AMC 15.20.005. The chapter specifically includes within the definition of a public nuisance

"[a] prohibited campsite," defined as "an area where one or more persons are camping on public land in violation of" municipal code. AMC 15.20.020B.15.

By occupying public property dedicated to other purposes, prohibited campsites interfere with the public's interest in using public property for the important public purposes to which it has been dedicated. Abating prohibited camps thus returns public property to public use. It protects public property from concentrated accumulations of human excrement and hazardous trash and from environmental degradation.[2] And it protects public health and public safety from the well-known threats posed by prohibited camping.[3]

In light of the vital importance of those government interests, the Anchorage Assembly reasonably decided to allow for abatement of prohibited campsites on public

_____

[2] *See* Assembly Ordinance (AO) No. 2018-53(S), as amended (June 26, 2018), *available at* https://library.municode.com/ak/anchorage/ordinances/code_of_ordinances?nodeId=899034 (recognizing that "the recent growth of illegal campsites necessitates … comprehensively clean[ing]-out hazardous areas in our parks and on other public lands").

[3] *See, e.g.*, AO 2018-53(S) (recognizing that the "presence of illegal campsites on Municipal property creates public health and safety issues for both the campers and the public at large"); AO 2017-130(S) (Dec. 5, 2017), *available at* https://www.muni.org/Lists/AssemblyListDocuments/Attachments/664789/AO%202017-130(S)%20OCR.pdf (whereas clause recognizing that "many homeless people have died along greenbelts at illegal campsites"); Assembly Memorandum (AM) 685-2017 (Sept. 26, 2017), *available at* https://www.muni.org/Lists/AssemblyListDocuments/Attachments/664788/AO%202017-130%20OCR.pdf (memorandum introducing ordinance to the assembly, explaining that "[m]any community councils… approached the assembly with concerns" that residents "feel unsafe near and sometimes threatened by the people occupying the illegal campsites").

Motion to Dismiss
*Smith v. Municipality of Anchorage,* Case No. 3:22-cv-00257-SLG
Page 23 of 36

property after 10-days of prior notice, combined with all of the other procedural protections of the code (including additional oral notice and time to gather belongings when the abatement begins, and judicial review and storage of property during such review). The Assembly explained in prefatory clauses enacting the 10-day period that the Assembly selected that notice period in order to "preserv[e] adequate notice and due process protections for the public." AO 2017-130(S) (for hyperlink see *supra* n.2). And the memorandum to the Assembly accompanying the draft ordinance establishing the 10-day period explained that the Assembly "s[ought] a compassionate balance between removal of illegal camps and the rights of the homeless," and reasonably concluded that "[a] ten-day rule strikes this balance by allowing sufficient notice for a homeless person to protect or remove their possessions but also assuring the community that the prohibition on illegal camping is being effectively enforced." AM 685-2017 (for hyperlink see *supra* n.3).

Case law supports the Assembly's reasonable conclusion that 10-days' prior notice, combined with the other procedure protections available under the code, adequately protect campers' interest in knowing how to retain their personal property when the Municipality decides to abate a prohibited camp to advance the public interest.

A few litigated cases involve procedures in other jurisdictions that far exceed any constitutional minimum of prior notice or storage after abatement, such as over a month of advance notice and three months of storage post-abatement. *See Cobine v. City of Eureka*, No. C 16-02239 JSW, 2016 WL 1730084, at *4 (N.D. Cal. May 2, 2016)

Motion to Dismiss
*Smith v. Municipality of Anchorage,* Case No. 3:22-cv-00257-SLG
Page 24 of 36

(upholding against Fourth and Fourteenth Amendment challenges an abatement with 41-days advance notice and 90-days storage of certain items); *Acosta v. City of Salinas*, No. 15-CV-05415 NC, 2016 WL 1446781, at *2, *5-8 (N.D. Cal. Apr. 13, 2016) (upholding against unspecified constitutional challenge an abatement procedure involving 15-day notice with 90-day storage of certain limited items); *Proctor*, 310 F. Supp. 3d at 110-11 (14-day notice and 60-day storage of unabandoned property).

Other litigated cases involve abatement procedures that fall far below constitutional minimums by providing for no prior notice and either no post-abatement storage or storage for only a few days without prior notice. In *Lavan*, for example, the Ninth Circuit held that immediate abatement and destruction of property without any prior notice and without any post-abatement storage and opportunity to reclaim items violated the Fourth and Fourteenth Amendments. 693 F.3d at 1029 n.8, 1030-31, 1032-33; *see also Phillips v. City of Cincinnati*, 479 F. Supp. 3d 611, 6446-47 (S.D. Ohio 2020) (holding that no prior notice of abatement combined with a failure to explain to property owners how to obtain any property that may have been stored violates due process and the Fourth Amendment); *Mitchell v. City of Los Angeles*, No. 16-cv-1750, 2016 WL 11519288, at *3, *5 (C.D. Cal. Apr. 13, 2016) (same). Similarly, a district court in this Circuit has held that a policy of providing no advance notice and storing seized items for only 2 days before destroying them violated the Fourth and Fourteenth Amendments. *Riverside All of US or None v. City of Riverside*, No. 5:23-cv-01536, 2023 WL 7751774, at *5 (C.D. Cal. Nov. 14, 2023).

Most litigated cases uphold abatement procedures that provide modest advance notice of 1 to 3 days before an abatement action commences and 30 to 90 days of storage of certain property after an abatement. *See O'Callaghan v. City of Portland*, No. 3:12-cv-201, 2013 WL 5819097, at *4-5 (D. Or. Oct. 29, 2013) (1-day notice and 30-day storage); *Hooper v. City of Seattle*, No. 17-cv-77, 2017 WL 591112, at *5, *7 (W.D. Wash. Feb. 14, 2017) (3-day notice and 60-day storage of certain items); *Riverside All of US or None*, 2023 WL 7751774, at *5 (2-day notice and 90-day storage); *Yeager v. City of Seattle*, No. 2:20-cv-01813, 2020 WL 7398748, at *1, *4-5, *6-7 (W.D. Wash. Dec. 17, 2020) (2-day notice and 70-day storage of certain items); *De-Occupy Honolulu v. City & Cnty. of Honolulu*, No. 12-cv-668, 2013 WL 2285100, at *2, *6 (D. Haw. May 21, 2013) (1-day notice and 30-day storage); *Miralle v. City of Oakland*, No. 18-cv-6823, 2018 WL 6199929, at *3 (N.D. Cal. Nov. 28, 2018) (3-day notice and 90-day storage); *Phillips*, 479 F. Supp. 3d at 643-44 (3-day notice and storage of unspecified duration).

These cases do not establish a specific constitutional minimum of time that jurisdictions must afford campers to enable them to retain their property. The cases do suggest a sliding scale: jurisdictions that provide for little or no advance notice before an abatement must provide for post-abatement storage to give owners a meaningful opportunity to reclaim abated property. And jurisdictions that provide greater advance notice before an abatement, and thus give property owners a meaningful opportunity to retain their property by removing it themselves before an abatement, can provide for little or no post-abatement opportunity to reclaim abated property.

Courts have thus upheld abatement procedures where campers are given *no* advance notice of an abatement but were afforded 30 days to get their property out of storage before it would be destroyed after an abatement. *See Russell v. City & Cnty. of Honolulu*, No. 13-cv-475, 2013 WL 6222714, at *8, *12 (D. Haw. Nov. 29, 2013) (no notice, 30-day storage); *Watters v. Otter*, 955 F. Supp. 2d 1178, 1189-91 (D. Idaho 2013) (no notice, 90-day storage). And courts have upheld abatement procedures that provide somewhat greater advance notice and significantly less post-abatement storage. For example, in *Sullivan v. City of Berkeley*, No. 17-cv-06051, 2017 WL 4922614 (N.D. Cal. Oct. 31, 2017), the district court upheld a policy that, "unlike the policy under attack in *Lavan*," gave the plaintiffs "notice that their property will be seized and 72 hours to make arrangements to move their property," with storage generally available for 14 days thereafter before destruction. *Id.* at *2, *6

Perhaps because so few litigated cases involve abatement procedures that provide for a pre-abatement notice period nearly as long as the Municipality's 10-day procedure, to the Municipality's knowledge no litigated case has yet addressed whether a pre-abatement notice period of that duration obviates the need under the Constitution to provide for post-abatement storage for everyone (and not just those who appeal and thereby obtain a right to storage as under the Municipality's code). This Court should uphold the 10-day pre-abatement notice period at issue here for the same reason that courts have upheld no-notice abatement combined with post-abatement storage.

What is essential for the reasonableness of any procedure is that a property owner have a reasonable opportunity to protect his or her private property interest—whether before or after an abatement—without unduly interfering with the vital public interest in protecting public spaces for public uses. Pre-abatement notice gives property owners at least as much opportunity to avoid erroneous destruction of their property as post-abatement notice. Indeed, in the trade-off between pre-abatement notice and post-abatement storage, pre-abatement notice is more valuable because it occurs when campers still have unfettered opportunity to control, use, and move or otherwise dispose of their own property at will, before the Municipality comes into possession of it. A 10-day notice period and opportunity to secure private property before abatement of a prohibited camp on public property is thus reasonable and constitutionally permissible. *Cf. Crane v. City of Dunsmuir*, No. 2:21-cv-22, 2022 WL 159036, at *2, *3 (E.D. Cal. Jan. 18, 2022), *report and recommendation adopted*, 2022 WL 493123 (E.D. Cal. Feb. 17, 2022) (concluding that 16-day period to remove property from inside a condemned building did not violate Constitution).

The reasonableness of the 10-day standard is confirmed by the litigation that led to its adoption. The code had previously provided for 12-hour notice when first enacted in 2009 and then 5-day notice when amended in 2010. *See Engle v. Municipality of Anchorage*, No. 3AN-10-7047 CI, 2011 WL 8997466 (Alaska Super. Jan. 04, 2011) (unfortunately unpaginated on Westlaw). When those procedures were challenged on due process and search and seizure grounds by different plaintiffs in state court, the state

court emphasized that "the State and Municipality typically provide individuals with a minimum of 10 to 15 days before classifying property as abandoned," and, without identifying an absolute constitutional minimum, concluded that 5-day pre-abatement notice fell too far below that typical standard. *Id.* The Municipality should not be faulted for adjusting its pre-abatement notice in precisely the way implied by that prior case.

Plaintiff identifies no basis for concluding that the (at least) 10 days of pre-abatement notice he alleged he received departed below any constitutional minimum. He offers no administrable basis for drawing a line of constitutional significance between 10 or 15 days. Indeed, he offers no particular notice period after which, in his view, the Municipality *could* proceed to abate a prohibited campsite—a campsite on public property that Plaintiff has no right to occupy. He identifies no basis by which the Court could conclude that post-abatement storage is constitutionally required regardless of the duration of pre-abatement notice, the opportunity to secure private property interests during that period, and the opportunity to secure post-abatement storage by appealing.

Indeed, the question whether post-abatement storage is always required by the Constitution regardless of any other property protections is not properly before this Court given Plaintiff's undisputed power under the Code to appeal a noticed abatement and thereby trigger an obligation for the Municipality to store his property pending that appeal. AMC 15.20.020B.15.f.ii. Accordingly, the simplest path to upholding the challenged aspects of the camping abatement code is to recognize that 10 days of pre-

abatement notice is constitutional when paired with the opportunity for judicial review and property storage pending the resolution of that judicial review.

## B. The Municipality's Reasonable Abatement Procedures Satisfy Due Process.

Just as the Municipality's abatement procedures satisfy the Fourth Amendment because they are reasonably drawn to effectuate vital public interests while adequately protecting private property, they also satisfy the Due Process Clause of the Fourteenth Amendment. Nearly all of the cases described above uphold municipal abatement procedures against both Fourth Amendment and due-process challenges for largely the same reasons. This Court should do so as well.

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV § 1. For the reasons described in Part III.A.2 above, Plaintiff abandoned his interests in any property he left behind at the close of the 10-day notice period, and this claim could reasonably be resolved on that ground. In any event, for the reasons described in Part III.A.3 above, the Municipality provided Plaintiff due process: adequate notice (here, at least 10 days before an abatement commenced) and opportunity to take action to protect property from abatement by relocating it or by seeking judicial review.

"The essence of due process is the requirement that a person in jeopardy of serious loss be given notice of the case against him and opportunity to meet it." *Mathews v.*

*Eldridge*, 424 U.S. 319, 348 (1976) (cleaned up). The type of notice and opportunity required by due process in a "particular situation" hinges on a three-factor "analysis of the governmental and private interests that are affected" in that situation. *Id.* at 334. The Court must thus consider: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

That test tilts strongly in favor of upholding the abatement procedure at issue here. On the first factor, the Municipality recognizes the basic property interest shared by everyone in "the continued ownership of their [unabandoned] personal possessions." *Lavan*, 693 F.3d 1031. But even if Plaintiff were not deemed for purposes of the Due Process Clause to have formally abandoned property that he knowingly left in an abatement zone upon the expiration of the 10-day notice period, the strength of Plaintiff's interest in continued ownership of that property would be diminished in proportion to the duration of pre-abatement notice and the meaningful opportunities available to him protect his property. Plaintiff appears to recognize as much insofar as he does not appear to request that this Court recognize a private interest in keeping private possessions on public property *indefinitely* in violation of law. Accordingly, Plaintiff's private interest in

this case in maintaining his possessions on public property for more than 10 days after receiving notice of abatement is, at best, a diminished interest.

On the second factor, there is little risk of erroneous deprivation of private property in light of existing procedures that give Plaintiff ample opportunity to remove his personal possessions from a 10-day abatement area before the abatement is carried out or to otherwise secure storage. Among other things, the Municipality must provide written and oral notice at least 10 days before the abatement stating the location of the prohibited camp, the reason it is prohibited, when abatement will occur, the means by which a camper may appeal to state court, the consequences of filing such an appeal (delay of abatement, or storage of property), and how to reclaim any stored property after an abatement. *See* AMC 15.20.020B.15.a, 15.b.iv, and 15.b.v. During the pre-abatement notice period, campers who wish to retain their personal possessions may do so by removing it themselves. (There may be no more than 10 active abatements in contiguous and compact zones at one time. 15.b.v.(D).) Moreover, the Municipality must provide notice to community councils and local public and private service providers to "encourage and accommodate the transition of campsite occupants to housing and the social service community network." 15.d. Before commencing the abatement, the Municipality must first confirm whether an appeal has been filed or noticed, and it must store for 30 days the property of anyone who has appealed. *See* 15.f; 15.c. When the abatement commences, the Municipality must give campers an additional 20 minutes to

gather any remaining items and must not stop campers from removing such items themselves. *See* 15.g.

Only after missing all of those opportunities to retain possession of his personal items would Plaintiff then face any risk of deprivation of his property upon the commencement of the posted abatement. Plaintiff does not allege any facts attempting to explain why, in his particular situation, these existing procedures gave him constitutionally insufficient opportunity to retain his property. Nor does Plaintiff explain how any further process would meaningfully reduce the risk of erroneous deprivation without significantly impeding the goals the Municipality seeks to achieve by abating prohibited camps in the first place.

On the third factor, the Municipality has a vital interest in abating prohibited camps. As courts have recognized, the government has "a substantial interest in ensuring that public property is available for use by everyone." *De-Occupy Honolulu*, 2013 WL 2285100, at *6. And, as explained in more detail above, abating prohibited camping helps ensure that parks, trails, playgrounds, open spaces, secluded woods, sidewalks, streets, and other rights of way can be used for the public purposes to which those properties have been dedicated. Camp abatement serves the important interests in protecting the public health; the environment; and the safety of the public (both campers and non-campers) from property and security threats. Adding significant new procedural protections before the Municipality may abate prohibited camping would thus harm the public interest by impeding these objectives. Additional process "would certainly

increase the administrative burden of ensuring that public property is available for use by the entire public, and as explained above, would add little procedural safeguard of preventing erroneous deprivation." *Id.* Additional process is thus not constitutionally required.

In sum, due process simply requires that "[t]he government may not take property like a thief in the night; rather, it must announce its intentions and give the property owner a chance to argue against the taking." *Lavan*, 693 F.3d 1032 (quotation marks omitted). That is exactly what the Municipality has provided for in the provisions of the abatement code at issue here, and the Constitution does not demand more.

## C.     Punitive Damages Are Not Available Against the Municipality.

Finally, regardless of how the Court resolves the other issues presented, the Court should dismiss Plaintiff's claim for punitive damages, Dkt. 12-1, at 8, for the independent reason that only the Municipality is a defendant in this action and "a municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

## CONCLUSION

For the foregoing reasons, this Court should: (1) dismiss Plaintiff's claims seeking prospective relief for lack of Article III standing; (2) order Plaintiff to state the year and approximate date of the alleged April 16 abatement and, if the abatement occurred before June 10, 2022, dismiss Plaintiff's claims seeking retrospective damages as untimely; and, (3) if the Court reaches the merits, dismiss Plaintiff's claims because the Municipality of

Motion to Dismiss
*Smith v. Municipality of Anchorage,* Case No. 3:22-cv-00257-SLG
Page 34 of 36

Anchorage's procedures for abating prohibited camping are reasonable and provide adequate notice and opportunity to avoid destruction of property, and because punitive damages are not available against the Municipality.

Respectfully submitted this 8th day of January 2025.

EVA R. GARDNER
Municipal Attorney

JOSEPH F. BUSA
Deputy Municipal Attorney

JESSICA B. WILLOUGHBY
Assistant Municipal Attorney

MUNICIPAL ATTORNEY'S OFFICE
MUNICIPALITY OF ANCHORAGE

Attorneys for Defendant

By: */s/ Joseph F. Busa*
632 W. 6th Ave., Suite 730
Anchorage, AK 99501
Phone:  907-343-4545
E-mail: Joseph.Busa@anchorageak.gov
Alaska Bar No. 2005030

Certificate of Length
I hereby certify that this Motion complies with the length limitations of Local Civil Rule 7.4 because it contains 8,642 words.

/s *Joseph F. Busa*
Joseph Busa, Deputy Municipal Attorney
Municipal Attorney's Office

Certificate of Service
I hereby certify that on January 8, 2024, this motion was filed electronically through the CM/ECF system. I have also caused service to be provided to Mr. Gregory Smith by sending first class regular mail to the address listed on this Court's docket for Mr. Smith and also by email to an address by which Mr. Smith has previously communicated with the Municipal Attorney's Office.

/s *Joseph F. Busa*
Joseph Busa, Deputy Municipal Attorney
Municipal Attorney's Office

Motion to Dismiss
*Smith v. Municipality of Anchorage,* Case No. 3:22-cv-00257-SLG
Page 36 of 36