# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

GREGORY SMITH,

        Plaintiff,

    v.

MUNICIPALITY OF ANCHORAGE,

        Defendant.

Case No. 3:23-cv-00257-SLG

## ORDER RE PENDING MOTIONS

Before the Court are four pending motions:

1. At Docket 20 is Defendant Municipality of Anchorage's Motion to Dismiss. Plaintiff Gregory Smith filed a response in opposition at Docket 22 and a memorandum of law in support of his response at Docket 24. The Municipality replied at Docket 31.

2. At Docket 21 is the Municipality's Motion for Order Requiring Plaintiff to State When Abatement Occurred. Mr. Smith did not file an opposition but filed the motion at Docket 23 in an apparent response. The Municipality replied at Docket 32.

3. At Docket 23 is Mr. Smith's Motion to Clarify Date of Abatement. The Municipality filed a response in opposition at Docket 34, incorporating by reference the arguments presented in its reply brief at Docket 32.

4. At Docket 25 is Mr. Smith's Motion for Preliminary Injunction.  The
   Municipality filed a response in opposition at Docket 33.  Mr. Smith did
   not file a reply.

Oral argument was not requested and was not necessary to the Court's
determinations.

## BACKGROUND

Anchorage Municipal Code ("AMC") § 15.20.020 identifies "prohibited
campsites" as public nuisances and outlines procedures for abatement.[1]  As
relevant here, notice of an impending campsite or "zone abatement"—when the
Municipality simultaneously abates all campsites within a contiguous area—must
be posted ten days before the physical removal of property may begin.[2]  Notices
must be conspicuously posted "on or near each tent, hut, lean-to, or other shelter
designated for removal" and must state the location of the prohibited campsite or
zone to be abated, the code provision under which the camp is prohibited, the
specific abatement procedure to be used for the prohibited camp, the means by
which a camper may appeal to the state court and provide to the Municipality notice
of an intent to appeal, that an appeal or notice of intent to appeal received before

---

[1] The Anchorage Municipal Code is available at
https://library.municode.com/ak/anchorage/codes/code_of_ordinances  (last accessed July 18,
2025).

[2] AMC § 15.20.020.B.15.b.v.

Case No. 3:23-cv-00257, *Smith v. Municipality of Anchorage*
Order re Pending Motions
Page 2 of 39

the abatement date will delay abatement, and the "contact and location information for reclaiming" any stored property.[3] The abatement procedures specify that an appeal to the superior court may be taken "within 30 days from the date the notice of campsite abatement is posted."[4]  If an appeal is filed, the Municipality may remove personal property but must "store it until either the appeal is withdrawn, settled, or a decision is issued and any subsequent appeal rights expire."[5]

On November 7, 2023, self-represented litigant Gregory Smith initiated this action; his Complaint alleged that the Municipality of Anchorage's policy and practice of abating campsites in accordance with AMC § 15.20.020 violated his constitutional rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.[6]  Mr. Smith named the Municipality of Anchorage, Mayor Dave Bronson, Health Department Director Kimberly Rash, Parks and Recreation Director Michael Braniff, Chief of Police Michael Kerle, and Municipal Attorney Jessica Willoughby as defendants, and he sought "declaratory and

---

[3] AMC § 15.20.020.B.15.a. Notice shall "[a]lso be given orally to any persons in or upon the prohibited campsite or who identifies oneself as an occupant of the campsite." AMC § 15.20.020.B.15.a.v.

[4] AMC § 15.20.020.B.15.e.

[5] AMC § 15.20.020.B.15.f.ii.

[6] Docket 1 at 3–4.

Case No. 3:23-cv-00257, *Smith v. Municipality of Anchorage*
Order re Pending Motions
Page 3 of 39

injunctive relief" on behalf of himself and all others similarly situated.[7]  Mr. Smith also requested expedited consideration of his case and a temporary restraining order due to an "enforcement action" anticipated to occur two days later, on November 9, 2023.[8]

On November 9, 2023, the Court issued an order addressing Mr. Smith's request for a temporary restraining order.[9]  The  Court concluded that Mr. Smith had "not demonstrated that he faces irreparable harm unless enforcement of AMC § 15.20.020.15 is immediately enjoined" because there was no evidence in Mr. Smith's filings to support his claim that Defendants intended to conduct an enforcement action on November 9, 2023.[10]  Because Mr. Smith failed to demonstrate an emergency justifying expedited relief, the Court denied the motion.[11]  The Court also noted that, as a self-represented litigant, Mr. Smith "may not bring claims on behalf of others or represent a class."[12]

_____

[7] Docket 1 at 2, 4.

[8] Docket 1 at 4; Dockets 4–5.

[9] The Court also granted Mr. Smith's motion to waive the filing fee and granted the motion to expedite as to the motion for a temporary restraining order.  Docket 7 at 5–6.

[10] Docket 7 at 5.

[11] Docket 7.

[12] Docket 7 at 4–5.

Case No. 3:23-cv-00257, *Smith v. Municipality of Anchorage*
Order re Pending Motions
Page 4 of 39

The Court thereafter screened the Complaint in accordance with 28 U.S.C. §§ 1915, 1915A. In the screening order dated March 5, 2024, the Court explained that Mr. Smith's "claims against city employees that challenge the enforcement of a provision of the Anchorage Municipal Code [were] redundant with his claim against the Municipality" and dismissed Mr. Smith's claims against individual city employees.[13] The Court also found that Mr. Smith failed to plead specific facts to support his constitutional claims because, "although Plaintiff indicated he is 'Houseless (Davis Park),' he has not pleaded facts regarding when or where any alleged enforcement actions actually occurred, what notice was provided, Plaintiff's involvement in such enforcement actions, the availability of other shelter, whether property was seized or destroyed, whether civil or criminal penalties were imposed, or any other information to support [his] claims."[14] The Court reviewed the applicable Ninth Circuit caselaw regarding municipal regulation of homeless individuals' campsites and dismissed the Complaint because it "fail[ed] to provide sufficient facts, that if proven, could state a plausible claim for relief."[15] The Court granted Mr. Smith leave to file an amended complaint in accordance with the

---

[13] Docket 8 at 6–7.

[14] Docket 8 at 7–8.

[15] Docket 8 at 8–11.

Case No. 3:23-cv-00257, *Smith v. Municipality of Anchorage*
Order re Pending Motions
Page 5 of 39

guidance provided in the Court's screening order within 60 days.[16]  Mr. Smith did not file an amended complaint within 60 days, and the Court issued an order of dismissal on May 6, 2024.[17]

Shortly thereafter, Mr. Smith filed a motion for leave to file an amended complaint out of time and a proposed amended complaint.[18]  The Court granted Mr. Smith's motion for leave to file the amended complaint, vacated the order of dismissal, and stated that it would screen the amended complaint in due course.[19]

On October 21, 2024, the Court screened Mr. Smith's Amended Complaint and found that "[l]iberally construed, the Amended Complaint contains sufficient facts, that accepted as true, state a plausible claim under the Fourth and Fourteenth Amendments—because the seizure and destruction of Plaintiffs' property may have been unreasonable, and the allegedly inadequate notice raises a due process issue."[20]  The Court directed Mr. Smith to effectuate service upon the Municipality within 90 days of its order.[21]

_____

[16] Docket 8 at 12.

[17] Docket 9.

[18] Docket 12 (dated May 14, 2024, and received May 22, 2024).

[19] Docket 13.

[20] Docket 14 at 1.

[21] Docket 14 at 2.

The Amended Complaint alleges that the Municipality's "policy of conducting sweeps of homeless encampments, . . . authorized by Anchorage Municipal Code (AMC) § 15.20.020 . . . violate[s] the fundamental rights of homeless individuals, as guaranteed by the United States Constitution."[22] The Amended Complaint alleges that Mr. Smith is "without permanent housing"[23] and that he has been subjected to the campsite abatement procedures he challenges. Specifically, the Amended Complaint alleges that, on April 16 of an unspecified year, after providing 10 days' notice, the Municipality conducted a sweep of Mr. Smith's encampment and confiscated and destroyed all of Mr. Smith's possessions including his tent, sleeping bag, and asthma inhaler.[24] Mr. Smith alleges that the Municipality's "warrantless entry into campsites and seizure of personal property under AMC § 15.20.020 runs afoul of the Fourth Amendment's protection against unreasonable searches and seizures," and that "the lack of any meaningful pre-deprivation hearing before the seizure of essential belongings . . . violates the Fourteenth

---

[22] Docket 12-1 at 1. Mr. Smith brings his claims pursuant to 42 U.S.C. § 1983, which provides a civil cause of action for the violation of federal constitutional and statutory rights by persons acting under color of state law. The Municipality does not dispute that it qualifies as a person acting under color of state law under § 1983 for the purposes of this case. *See generally* Docket 20.

[23] Docket 12-1 at 3.

[24] Docket 12-1 at 5–6.

Case No. 3:23-cv-00257, *Smith v. Municipality of Anchorage*
Order re Pending Motions
Page 7 of 39

Amendment's Due Process Clause."[25]  Mr. Smith brings his amended claims against only the Municipality of Anchorage.[26]

The Municipality now moves to dismiss Mr. Smith's Amended Complaint for lack of standing and failure to state a claim.[27]  The Municipality also moves for an order requiring Mr. Smith to state when the past abatement alleged in the Amended Complaint occurred.[28]  After the Municipality filed its Motion to Dismiss, Mr. Smith filed a Motion for Preliminary Injunction and Motion to Clarify Date of Abatement.[29]

The Court has jurisdiction pursuant to 28 U.S.C § 1331.

---

[25] Docket 12-1 at 1.

[26] Docket 12-1 at 1, 3.  Mr. Smith at times appears to assert claims on behalf of other persons in addition to himself. *See* Docket 12-1 at 1 (describing "Plaintiffs" as "Gregory Smith et al."); Docket 24 (referring to "Plaintiffs" throughout Mr. Smith's opposition to the Municipality's Motion to Dismiss); *but see* Docket 12-1 at 3 (listing Plaintiff, Gregory Smith as the sole plaintiff in this action).  The Court explained in prior orders that Mr. Smith, as a self-represented litigant, "may not bring claims on behalf of others or represent a class." Docket 7 at 4-5; Docket 8 at 7. Mr. Smith's individual claims are the only claims that the Court allowed through screening, Docket 8 at 7, the only claims remaining in this case, and the only claims addressed in this order.

[27] Docket 20.  The Municipality also initially moved to dismiss on the basis that Mr. Smith's claims were untimely, but withdrew its timeliness argument as discussed *infra*, page 12.

[28] Docket 21.

[29] Dockets 23, 25.  At Docket 30, the Court denied expedited consideration of Mr. Smith's Motion for Preliminary Injunction.

Case No. 3:23-cv-00257, *Smith v. Municipality of Anchorage*
Order re Pending Motions
Page 8 of 39

## LEGAL STANDARDS

### I.      Rule 12(b)(1) Motion to Dismiss

A lack of standing necessitates dismissal of an action under Federal Rule of Civil Procedure 12(b)(1) for want of jurisdiction.  "A Rule 12(b)(1) jurisdictional attack may be facial or factual."[30]  In this case, the Municipality brings a facial attack.[31]  "In a facial attack, the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction."[32]  "The district court resolves a facial attack" on standing under Rule 12(b)(1) "as it would a motion to dismiss under Rule 12(b)(6)" by determining whether the plausible allegations in the complaint, accepted as true, "are sufficient as a legal matter to invoke the court's jurisdiction."[33]

### II.      Rule 12(b)(6) Motion to Dismiss

A party may seek dismissal under Federal Rule of Civil Procedure 12(b)(6) for a complaint's "failure to state a claim for which relief can be granted."  "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain

---

[30] *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

[31] *See* Docket 20 at 16 (citing legal standard for facial attack); Docket 20 at 17–19 (challenging standing based on allegations in the Amended Complaint).

[32] *Safe Air for Everyone*, 373 F.3d at 1039.

[33] *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

Case No. 3:23-cv-00257, *Smith v. Municipality of Anchorage*
Order re Pending Motions
Page 9 of 39

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[34]  Nonetheless, "the trial court does not have to accept as true conclusory allegations in a complaint or legal claims asserted in the form of factual allegations."[35]

### III. Motion for Preliminary Injunction

In *Winter v. Natural Resources Defense Council, Inc.*, the United States Supreme Court held that plaintiffs seeking preliminary injunctive relief must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest.[36] The Supreme Court in *Winter* characterized "injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."[37]

Following *Winter*, the Ninth Circuit addressed the first element—the likelihood of success on the merits—and held that its "serious questions" approach to preliminary injunctions was still valid "when applied as a part of the four-element

---

[34] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[35] *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016).

[36] 555 U.S. 7, 20 (2008).

[37] *Winter*, 555 U.S. at 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)).

*Winter* test."[38]   Under that approach, if a plaintiff shows "that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor.'"[39]  All four *Winter* elements must still be satisfied under this approach.[40]

Injunctive relief is an equitable remedy, and "[t]he essence of equity jurisdiction is the power of the court to fashion a remedy depending upon the necessities of the particular case."[41]

## DISCUSSION

### I.    Motion to Dismiss

The Municipality moves to dismiss Mr. Smith's Amended Complaint on two grounds: first, that Mr. Smith lacks standing to seek equitable relief; and second, that Mr. Smith fails to plausibly state Fourth and Fourteenth Amendment claims. The Municipality also initially asserted in its Motion to Dismiss that Mr. Smith's

---

[38] *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–32 (9th Cir. 2011).

[39] *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (emphasis in original) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)).

[40] *All. for the Wild Rockies*, 632 F.3d at 1135 ("Of course, plaintiffs must also satisfy the other *Winter* factors."); *see also, e.g.*, *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013) (describing standard for preliminary injunction).

[41] *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1022 (9th Cir. 2009) (quoting *United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 175 (9th Cir. 1987)).

claims arising out of an "April 16" abatement action were untimely. However, Mr. Smith has since clarified that he believes the past abatement action of which he complains occurred "on or about June 24, 2022."[42] The Municipality accepted this clarification as "an adequate response mooting the Municipality's motion [at Docket 21] for a more definite statement of the claim" and no longer seeks to "dismiss as untimely any claims for retrospective relief arising from alleged destruction of property on or about June 24, 2022."[43] For the purposes of this motion, the Court assumes without deciding that the past abatement of Mr. Smith's campsite described in the Amended Complaint occurred on or about June 24, 2022.[44]

### A. Standing for Equitable Relief

In the Amended Complaint, Mr. Smith seeks both money damages and equitable remedies, including injunctive and declaratory relief.[45] The Municipality moves to dismiss Mr. Smith's equitable relief claims for lack of standing.

---

[42] Docket 23 at 2.

[43] Docket 32 at 2; Docket 31 at 11. The Municipality asserts that "[t]o the extent Plaintiff may still be seeking damages for any alleged destruction of property occurring before June 10, 2022, any such claims should be dismissed as untimely." Docket 31 at 11. The Court declines to reach this issue because it is not necessary to the disposition of this motion.

[44] Mr. Smith's "Motion to Clarify the Date of Abatement" seeks an order directing the Municipality to "formally confirm or deny the date of abatement at Davis Park on or about June 24, 2022." Docket 23 at 3. The Municipality contends that it not necessary to resolve this factual issue at this time. Docket 32 at 2–3. The Court agrees and denies the motion at Docket 23.

[45] Docket 12-1 at 7–9.

"Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'"[46] "One element of the case-or-controversy requirement is that [plaintiffs] . . . must establish that they have standing to sue."[47] To have standing, a plaintiff must allege an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling."[48]

"[A] plaintiff must demonstrate standing separately for each form of relief sought."[49] To have standing to seek equitable relief, such as an injunction or declaratory relief, a plaintiff must demonstrate a "likelihood of substantial and immediate irreparable injury."[50] "A plaintiff threatened with future injury has standing to sue 'if the threatened injury is certainly impending, or there is a substantial risk the harm will occur.'"[51] Past exposure to allegedly unlawful state action is "evidence bearing on whether there is a real and immediate threat of

---

[46] *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013)

[47] *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

[48] *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010).

[49] *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

[50] *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)).

[51] *In re Zappos.com, Inc.*, 888 F.3d 1020, 1024 (9th Cir. 2018) (internal quotation marks omitted) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).

repeated injury," but is not alone sufficient to establish a present case or controversy.[52]

The Municipality does not dispute that Mr. Smith has standing to seek damages because Mr. Smith alleges that he was harmed by a past abatement action that resulted in the destruction of his personal property. However, in the Municipality's view, neither this past injury nor any other allegations in the Amended Complaint establish Mr. Smith's standing to seek forward-looking injunctive or declaratory relief.[53] The Municipality contends that Mr. Smith would have to allege that he will continue to camp on public property in the future, that there is an impending abatement of his camp, that he is unable to secure alternate shelter, that he "would choose to keep his property in the noticed abatement zone rather than remove his possessions to another location," and that he would forgo an appeal and the accompanying property storage—none of which Mr. Smith has specifically alleged.[54]

---

[52] *Lyons*, 461 U.S. at 102 (internal quotation marks omitted).

[53] Docket 20 at 17–19.

[54] Docket 20 at 18; *see also* Docket 31 at 9 ("Plaintiff does not expressly allege that he plans to continue residing in a prohibited camp in the future . . . Nor does he allege that, if his current camp were noticed for a 10-day abatement, he would refuse any offer of alternative housing and instead voluntarily choose to remain in the prohibited camp. He does not allege that he would choose to keep his property in the noticed abatement zone rather than remove his possessions to another location not slated for abatement. And he does not allege that he would forgo an appeal (and thus forgo the property storage that comes with appeal).").

The Municipality relies primarily on *Clapper v. Amnesty International, USA* in support of its assertion that Mr. Smith lacks standing, but the Court is not persuaded that *Clapper* controls here.[55] In that case, the Supreme Court held that the plaintiffs lacked standing to challenge a provision of the Foreign Intelligence Surveillance Act because it was "speculative whether the Government [would] imminently target communications" to which the plaintiffs were parties.[56] The provision at issue expressly provided that, as "United States persons," the plaintiffs could not be targeted for surveillance;[57] further, the plaintiffs' "fail[ure] to offer any evidence that their communications [had] been monitored" under the challenged provision "substantially undermine[d] their standing theory."[58] By contrast, AMC § 15.20.020 expressly provides for the removal of the type of encampments in which Mr. Smith alleges that he, as a homeless individual in Anchorage, has been forced to live because "affordable housing remained a cruel mirage."[59] And Mr. Smith

---

[55] Docket 20 at 17–19 (citing 568 U.S. at 409-10).

[56] *Clapper*, 568 U.S. at 411. The Supreme Court applied an "especially rigorous" standing analysis in *Clapper* in part because the case involved "actions of the political branches in the fields of intelligence gathering and foreign affairs." *Id.* at 408–09. The Court notes that issues of national security and foreign policy are not implicated in this action.

[57] *Id.* at 401, 411.

[58] *Id.* at 411.

[59] Docket 12-1 at 5; AMC § 15.20.020.B.15. ("A prohibited campsite is subject to abatement by the municipality."); *see also* Docket 12-1 at 4 (alleging that "[d]ue to a lack of affordable housing

Case No. 3:23-cv-00257, *Smith v. Municipality of Anchorage*
Order re Pending Motions
Page 15 of 39

alleges that he has had his personal property seized and destroyed pursuant to the abatement procedures he challenges.[60]

The Ninth Circuit has consistently held that homeless individuals have standing to bring constitutional challenges to municipal ordinances prohibiting sleeping and camping in public areas. In *Jones v. City of Los Angeles*, the Ninth Circuit relied on allegations of past enforcement actions and allegations that the plaintiffs were homeless individuals who lived on the streets within the regulated area to find that plaintiffs "demonstrated both past injuries and a real and immediate threat of future injury" sufficient for standing.[61] And in *Martin v. City of Boise*, the Ninth Circuit held at the summary judgment stage that the plaintiffs presented sufficient evidence of standing to seek injunctive relief because, as residents of or repeat visitors to Boise who remained homeless, they faced "a

---

and insufficient shelter space, [homeless] individuals [in Anchorage] are forced to create makeshift encampments").

[60] Docket 12-1 at 5.

[61] *Jones v. City of Los Angeles*, 444 F.3d 1118, 1120, 1126–27 (9th Cir. 2006), *vacated*, 505 F.3d 1006 (9th Cir. 2007). Although *Jones* was subsequently vacated pursuant to the terms of the parties' settlement agreement and is not binding, it is nonetheless persuasive on the issue of standing. *See DHX, Inc. v. Allianz AGF MAT, Ltd.*, 425 F.3d 1169, 1175–76 (9th Cir. 2005) (Beezer, J., concurring) ("[A]t minimum, a vacated opinion still carries informational and perhaps even persuasive or precedential value.").

credible threat of prosecution [pursuant to the challenged ordinances] . . . in the future" on nights when they may be denied access to Boise's homeless shelters.[62]

The Ninth Circuit's conclusions with respect to standing are consistent with the Supreme Court's recent decision in *City of Grants Pass v. Johnson*. In *Grants Pass*, the named plaintiffs were homeless individuals living in Grants Pass.[63] The plaintiffs challenged three municipal code provisions prohibiting sleeping and camping in public spaces, claiming that the penalties—which increased with each violation from a fine, to an order excluding violators from public parks, to criminal trespass charges—violated the Eighth Amendment's prohibition on cruel and unusual punishment.[64] The Supreme Court assumed that the plaintiffs had

---

[62] *Martin v. City of Boise*, 920 F.3d 584, 608–10 (9th Cir. 2019), *abrogated on other grounds by City of Grants Pass v. Johnson*, 603 U.S. 520 (2024); *accord Johnson v. City of Grants Pass*, 72 F.4th 868, 883 n.15 (9th Cir. 2023) ("[Plaintiff] is positioned to bring a pre-enforcement challenge against the park exclusion and criminal trespass ordinances, because they will be used against her given the undisputed fact that she remains involuntarily homeless in Grants Pass."), *rev'd and remanded on other grounds sub nom. City of Grants Pass*, 603 U.S. 520. The Court notes that many Ninth Circuit cases involving Eighth Amendment claims by homeless individuals emphasize allegations that the plaintiffs were "involuntarily homeless" due to a disparity in the number of shelter beds available and the number of homeless individuals in the regulated area. The Court reads this language as reflecting the Ninth Circuit's substantive Eighth Amendment jurisprudence at the time, *see Martin,* 920 F.3d at 618 ("a municipality cannot criminalize [camping] consistently with the Eighth Amendment when no sleeping space is practically available in any shelter"), rather than an additional requirement for standing to challenge regulations as facially unconstitutional, *see O'Shea*, 414 U.S. at 496 (noting that plaintiffs may have had standing had they alleged that the law under which they feared prosecution was unconstitutional on its face). In any event, Mr. Smith alleges that there is "insufficient shelter space" in Anchorage to shelter its homeless population. Docket 12-1 at 4.

[63] 603 U.S. at 538–39.

[64] *Id.* at 533–34, 537.

Case No. 3:23-cv-00257, *Smith v. Municipality of Anchorage*
Order re Pending Motions
Page 17 of 39

standing to challenge each of the code provisions even though "neither of the named plaintiffs . . . [had] been subjected to an order barring them from city property or to criminal trespass charges," and reached the merits of the plaintiffs' Eighth Amendment claim.[65]

Although *Jones*, *Martin*, and *City of Grants Pass* each involved challenges to criminal penalties rather than abatement actions, the Court finds no basis to distinguish between these two types of government enforcement actions in this context. When a person facing a "credible threat" of enforcement challenges the constitutionality of the enforced policy, that threat of enforcement renders injury "imminent."[66] At least one district court within this circuit has expressly applied this principle to find that a homeless plaintiff had standing to seek to enjoin municipal abatement procedures like those at issue in this case.[67] And district courts considering challenges to campsite abatement ordinances routinely either

---

[65] *Id.* at 537–38, 541–61. The Court of Appeals had considered and rejected the City's arguments that the named plaintiffs lacked standing. *Johnson*, 72 F.4th at 883–84 (finding that named plaintiffs had standing to challenge ordinances for which they risked enforcement).

[66] *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1154–55 (9th Cir. 2000) ("It is sufficient for standing purposes that the plaintiff intends to engage in 'a course of conduct arguably affected with a constitutional interest' and that there is a credible threat that the challenged provision will be invoked against the plaintiff." (quoting *Babbitt v. UFW Nat'l Union*, 442 U.S. 289, 298 (1979))).

[67] *Cobine v. City of Eureka*, 250 F. Supp. 3d 423, 434 (N.D. Cal. 2017) (finding homeless residents of Eureka had standing to bring a pre-enforcement Fourth Amendment challenge to anti-camping ordinance that provided for removal of property stored in public areas following a 24-hour notice period based on credible threat of enforcement).

conclude or assume that homeless residents living in the area where the ordinance applies have standing to seek injunctive relief.[68]

Here, Mr. Smith alleges that he "is a resident of the Municipality of Anchorage . . . and at all times relevant herein, was homeless."[69] He further alleges that, "through unfortunate circumstances, [he] has found himself without permanent housing," that "[d]ue to a lack of affordable housing and insufficient shelter space, [homeless] individuals [in Anchorage] are forced to create makeshift encampments," and that his encampment has been subject to the abatement procedures he challenges in the past.[70] Liberally construed, these allegations

---

[68] *Riverside All of US or None v. City of Riverside*, Case No. 5:23-CV-01536-SPG-SP, 2023 WL 7751774, at *1 (C.D. Cal. Nov. 14, 2023) (assuming that plaintiffs, including "four unhoused individuals living in and around the [Santa Ana Riverbed,]" had standing to seek injunctive relief against the City's clean-up or abatement efforts in and around the area); *Hooper v. City of Seattle*, Case No. C17-0077RSM, 2017 WL 591112, at *1 (W.D. Wash. Feb. 14, 2017) (assuming "two unhoused women who currently live outside on public property in the City of Seattle" and had "critical personal belongings taken and destroyed during sweeps conducted by the City" had standing to seek temporary restraining order challenge the City's management of homeless encampments); *O'Callaghan v. City of Portland*, Case No. 3:12-CV-00201-BR, 2013 WL 5819097, at *2 n.1, *3–4 (D. Or. Oct. 29, 2013) (noting that Rule 12(b)(1), which provides for dismissal for lack of jurisdiction, did "not . . . appear to apply" to the plaintiff's claims that the removal of his personal property from a public place after 24-hour notice violated the Fourth and Fifth Amendments); *De-Occupy Honolulu v. City & Cnty. of Honolulu*, Case No. CIV. 12-00668 JMS, 2013 WL 2285100, at *1, *3 (D. Haw. May 21, 2013) (assuming plaintiffs who "maintained a constant presence at Honolulu's Thomas Square for over a year" had standing to seek injunctive relief related to Honolulu's impoundment procedures); *cf. Wills v. City of Monterey,* 617 F. Supp. 3d 1107, 1117 (N.D. Cal. 2022) (finding that the plaintiff lacked standing to seek injunctive relief where she did not allege that she was still homeless or that she resided in the City of Monterey).

[69] Docket 12-1 at 3.

[70] Docket 12-1 at 3–5.

Case No. 3:23-cv-00257, *Smith v. Municipality of Anchorage*
Order re Pending Motions
Page 19 of 39

support a reasonable inference that Mr. Smith continues to live without shelter in Anchorage and could be affected by the City's camping abatement procedures at any time.[71] The alleged harm of dislocation and loss of personal property is concrete and particularized.[72] And the Municipality's history of enforcing the challenged policy against Mr. Smith bolsters the conclusion that Mr. Smith faces a "substantial risk" of injury from an allegedly unconstitutional abatement action. Mr. Smith thus has standing to seek prospective relief.

## B. Failure to State a Claim

The Municipality next moves to dismiss all of Mr. Smith's claims for failure to state a claim pursuant to Federal Rule of Procedure 12(b)(6).[73] Mr. Smith contends that AMC § 15.20.020 violates the Fourth and Fourteenth Amendments

---

[71] *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

[72] The Court agrees with the Municipality that Mr. Smith's asserted "fear of repeated sweeps," by itself, is not a "concrete and particularized injury." *See* Docket 31 at 7. The Supreme Court has made clear that standing cannot be based simply on "fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416; *see Lyons*, 461 U.S. at 107 n.8 ("The emotional consequences of a prior act simply are not a sufficient basis for an injunction absent a real and immediate threat of future injury by the defendant. Of course, emotional upset is a relevant consideration in a damages action.")

[73] In its briefing, the Municipality defends the constitutionality of AMC § 15.20.020 generally, rather than the specific, past abatement of Mr. Smith's campsite on which his damages claim is based. Docket 20 at 24–41; Docket 31 at 14–20. The Conclusion to the Municipality's Reply, however, makes clear that it seeks to dismiss both Mr. Smith's equitable relief claims and his damages claims pursuant to Rule 12(b)(6). Docket 31 at 23–24. The Court in this Section addresses dismissal with respect to both forms of relief.

and that the Municipality violated those constitutional protections when it abated his campsite "pursuant to AMC § 15.20.020."[74]  The Municipality contends that its abatement procedures satisfy the Fourth and Fourteenth Amendments.[75]

### 1. Fourth Amendment

The Fourth Amendment to the U.S. Constitution protects against "unreasonable searches and seizures" by the government.[76]  Mr. Smith alleges that the Municipality's "warrantless entry into campsites and seizure of personal property pursuant to AMC § 15.20.020," constitutes an unreasonable search and seizure in violation of the Fourth Amendment.[77]

*Search*. A "search" occurs when the government intrudes upon a "reasonable expectation of privacy."[78]  To determine whether a warrantless search violates the Fourth Amendment, courts ask two questions: "[F]irst, has the individual manifested a subjective expectation of privacy in the object of the challenged search? Second, is society willing to recognize that expectation as

---

[74] Docket 12-1 at 4–7.

[75] Docket 20 at 24–40.

[76] U.S. Const., amend. IV.

[77] Docket 12-1 at 1.

[78]  *United States v. Scott,* 450 F.3d 863, 867 (9th Cir. 2006) (quoting *Katz v. United States,* 389 U.S. 347, 361 (1967) (Harlan, J., concurring)).

Case No. 3:23-cv-00257, *Smith v. Municipality of Anchorage*
Order re Pending Motions
Page 21 of 39

reasonable?"[79]  A Fourth Amendment interest is violated only if the individual has both a subjective expectation of privacy and an objectively reasonable expectation of privacy in the area searched or object seized.[80]

Whether a homeless individual has a reasonable expectation of privacy in a campsite situated on public land depends on the circumstances of the alleged invasion.  Courts have routinely held that "a person has no 'reasonable expectation of privacy' in a temporary structure illegally built on public land, where the person knows that the structure is there without permission and the governmental entity that controls the space has not in some manner acquiesced to the temporary structure."[81]  By contrast, courts have held that "a reasonable expectation of

_____

[79] *California v. Ciraolo,* 476 U.S. 207, 211 (1986).

[80] The Municipality correctly points out that this formulation is not the exclusive test for what constitutes a "search." *See* Docket 20 at 24–25.  Recent Supreme Court cases have made clear that the Fourth Amendment accommodates both a privacy expectation test and a property rights test tied to historical, common law trespass concepts. Under a property-based search theory, the physical invasion of a property interest "alone does not qualify" as a search but "must be conjoined with . . . an attempt to find something or to obtain information." *United States v. Jones*, 565 U.S. 400, 408 n.5 (2012).  Mr. Smith does not allege that the Municipal abatement actions involve any attempt to find or obtain information, so the property-based search theory is not implicated here.

[81] *State v. Tegland*, 344 P.3d 63, 67-68 (Or. 2015) (first citing *United States v. Ruckman,* 806 F.2d 1471, 1472–73 (10th Cir. 1986) (holding that the Fourth Amendment was not violated, because the defendant held no objectively reasonable expectation of privacy in the cave he had resided in for several months, where the cave was on public land, and the defendant admitted that he was trespassing and subject to immediate ejectment); then citing *Amezquita v. Hernandez–Colon*, 518 F.2d 8, 11 (1st Cir. 1975) (holding that members of a squatter community had no reasonable expectation of privacy in their homes on government-owned land, because they "had no colorable claim to occupy the land [and] had been asked twice to depart voluntarily"); then citing *People v. Nishi,* 143 Cal. Rptr. 3d 882, 891 (Cal. Ct. App.

privacy" exists "where the governmental entity that controlled the space has, by permission or acquiescence, allowed the structure to be on the public land in question, even if the structure was not legally permitted."[82]  For example, in *United States v. Sandoval*, the Ninth Circuit held that a camper had a reasonable expectation of privacy in a makeshift tent on public land where, among other things, the camper "was never instructed to vacate or risk eviction, and the record does not establish any applicable rules, regulations or practices concerning recreational or other use of [the] land."[83]

---

2012) (holding the Fourth Amendment was not violated, because the defendant did not have an objectively reasonable expectation of privacy within the "curtilage" of his campsite, where the defendant was illegally camped on public land, the defendant knew it was illegal, and the defendant had not been given permission to camp there); and then citing *People v. Thomas,* 45 Cal. Rptr. 2d 610, 613 (Cal. Ct. App. 1995) (holding that a "person who occupies a temporary shelter on public property without permission and in violation of an ordinance prohibiting sidewalk blockages is without a reasonable expectation that his shelter will remain undisturbed")).

[82] *Id.* (first citing  *United States v. Sandoval,* 200 F.3d 659, 661 (9th Cir. 2000); then citing *State v. Pruss,* 181 P.3d 1231, 1235 (Idaho 2008) (holding that the defendant had an objectively reasonable expectation of privacy in his temporary shelter, despite it being constructed on public land not designated for camping, because the State of Idaho had a "longstanding custom" of "[u]tilizing public lands for outdoor recreational activities," including on public lands not designated for camping, and because there was no evidence that the defendant had been told to leave); then citing *People v. Hughston,* 85 Cal. Rptr. 3d 890, 897–98 (Cal. Ct. App. 2008) (holding that the defendant had a Fourth Amendment reasonable expectation of privacy in a tarp structure "erected on land specifically set aside for camping during [a] music festival"); and then citing *State v. Dias,* 609 P.2d 637, 640 (Haw. 1980) (holding that the defendants had a Fourth Amendment reasonable expectation of privacy in a shack that was part of a group of shacks called "Squatter's Row," located on land owned by the State of Hawaii, because "Squatter's Row" had been "allowed to exist by sufferance of the State for a considerable period of time")).

[83] 200 F.3d at 661.

Here, the Court agrees with the Municipality that Mr. Smith does not have a reasonable expectation of privacy in his encampment ten days after a notice of abatement has been issued regarding that encampment pursuant to AMC § 15.20.020.B.15.b. In his Amended Complaint, Mr. Smith acknowledges that he was given "[t]en days to find a new refuge" before his campsite was abated "pursuant to AMC § 15.20.020."[84] Subsection B.15.a requires that notice be posted "on or near each tent, hut, lean-to, . . . other shelter . . ., or other personal property designated for removal." The posted notice must "[s]tate the approximate location of the campsite, the code provision under which the campsite is prohibited, and that the campsite may be removed under one of the procedures set forth in [AMC §15.20.020.]B.15.b," and must contain information regarding filing an appeal or a notice of intent to appeal and the consequences of each.[85] These notice provisions distinguish the Municipality's intrusion onto Mr. Smith's campsite from the unlawful search in *Sandoval* and render any expectation of privacy that Mr. Smith may otherwise have based on the Municipality's prior acquiescence to a campsite[86] no longer reasonable by the time the intrusion occurs.

---

[84] Docket 12-1 at 5, 7.

[85] AMC § 15.20.020.B.15.a.

[86] *See* Docket 12-1 at 5 (alleging that Mr. Smith's "makeshift campsite . . . had offered a semblance of shelter for months").

Case No. 3:23-cv-00257, *Smith v. Municipality of Anchorage*
Order re Pending Motions
Page 24 of 39

**Seizure.** "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property."[87] "[A] reasonable expectation of privacy is not required to trigger Fourth Amendment protection against seizures."[88]

In *Lavan v. City of Los Angeles*, the Ninth Circuit held that "seizing and immediately destroying," without notice, the "unabandoned personal possessions" of homeless individuals "temporarily left on public" property "meaningfully interfere[s] with [the individuals'] possessory interests in that property. No more is necessary to trigger the Fourth Amendment's reasonableness requirement."[89] On the other hand, the Supreme Court has long held that "[t]here can be nothing unlawful in the Government's appropriation of . . . . *abandoned* property."[90]

The Municipality contends that it "could reasonably treat Plaintiff's property left behind during an abatement as abandoned" because "Plaintiff alleges that he received at least 10-days advance notice of impending abatement, knew the

---

[87] *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1027 (9th Cir. 2012) (quoting *United States v. Jacobsen,* 466 U.S. 109, 113 (1984)).

[88] *Id.* at 1028.

[89] *Id.* at 1024, 1030.

[90] *Abel v. United States*, 362 U.S. 217, 241 (1960) (emphasis added); *see also Hester v. United States*, 265 U.S. 57, 58 (1924) ("[T]here was no seizure in the sense of the law when the officers examined the contents of each after it had been abandoned."); *California v. Hodari D.*, 499 U.S. 621, 629 (1991) ("[C]ocaine abandoned while he was running was in this case not the fruit of a seizure, and his motion to exclude evidence of it was properly denied.").

consequences of leaving his property in the abatement area after the close of the notice period (destruction of the property as waste), and nonetheless chose to keep his belongings on public property and thus subject them to destruction."[91] Mr. Smith responds that his property was not "abandoned" but that he was "coerced into leaving [his] belongings behind due to . . . lack of reasonable alternatives," and that the Municipality's "destruction of [his] essential survival items" was not reasonable.[92]

Lavan clearly establishes that a homeless person has an interest in the continued ownership of his or her personal possessions even when those belongings are unattended.[93] But Lavan gives little guidance on how to distinguish abandoned property from merely unattended property. Abandonment was not a central issue in that case because the City of Los Angeles sought "a broad ruling that it may seize and immediately destroy any personal possessions, including medications, legal documents, family photographs, and bicycles, that are left momentarily unattended."[94] The City did "not deny that it ha[d] a policy and

---

[91] Docket 20 at 26–27 (first citing Docket 12-1, at 4-5; and then citing AMC § 15.20.020.B.15.b.v.B ("At the expiration of the notice period any personal property in the zone may be disposed of as waste.")).

[92] Docket 24 at 7.

[93] Lavan, 693 F.3d at 1031-32.

[94] Id. at 1024 n.1.

Case No. 3:23-cv-00257, Smith v. Municipality of Anchorage
Order re Pending Motions
Page 26 of 39

practice of seizing and destroying homeless persons' unabandoned possessions."[95] Thus there was no need for the appellate court to address whether the seized property was abandoned or merely unattended.[96]

The Municipality urges the Court to find that property that remains in an abatement area after a ten-day notice period is abandoned and that the Municipality's seizure of such property therefore does not implicate the Fourth Amendment. The Court declines to reach that issue because, even if Mr. Smith's property was not abandoned, the Court finds that the Municipality acts reasonably when it provides 10 days' advance notice of the abatement and an opportunity to appeal the abatement before a camper's personal property can be destroyed;[97] this finding is dispositive of Mr. Smith's Fourth Amendment claim.

Assessing the reasonableness of the Municipality's abatement procedure requires the Court to "balance[] the invasion of [Plaintiff's] possessory interests in

---

[95] *Id.* at 1025. The City also did not challenge any of the factual findings made by the district court in support of the ruling that was appealed. *Id.* at 1024 n.2. Nor did the City appeal the scope of the lower court's injunction that prohibited the City from seizing homeless persons' property "absent an objectively reasonable belief that it is abandoned, presents an immediate threat to public health or safety, or is evidence of a crime, or contraband." *Id.* at 1024. Los Angeles instead appealed only the legal standard applied by the district court. *Id.* at 1024–27.

[96] *Id.* at 1024.

[97] The Alaska Supreme Court recently clarified—in a case brought by Mr. Smith—that AMC § 15.20.020 provides a right of appeal of campsite abatement decisions to the Alaska state courts. *Smith v. Municipality of Anchorage*, 568 P.3d 367, 370–74 (Alaska 2025) (holding that Alaska Superior Courts have jurisdiction over substantive appeals of campsite abatement decisions).

Case No. 3:23-cv-00257, *Smith v. Municipality of Anchorage*
Order re Pending Motions
Page 27 of 39

[his] personal belongings against the [Municipality's] reasons for taking the property."[98]   The Court agrees with the Municipality that the abatement of prohibited camping on public property such as parks serves legitimate public interests. By occupying public property intended for other purposes, prohibited campsites interfere with the public's interest in using public property for the public purposes to which it has been dedicated.  The abatement processes to which Mr. Smith was subjected appear in the public nuisance chapter of the Anchorage Municipal Code, which prohibits any "public nuisance" that, among other things, "injures or endangers the safety, health, comfort or repose of the public."[99]  Other courts have routinely recognized that these are important government interests served by the removal of prohibited encampments and personal belongings from public lands.[100]

---

[98] *Lavan*, 693 F.3d at 1030.

[99] AMC § 15.20.020.A; AMC § 15.20.010.

[100] *See Love v. City of Chicago*, Case No. 96-C-0396, 1996 WL 627614, at *6 (N.D. Ill. Oct. 25, 1996) (finding that the city had "an important public health responsibility to remove and discard abandoned materials so they don't clutter the public way and endanger the health and safety of either the homeless or others passing through" the area.); *cf. Pottinger v. City of Miami*, 810 F. Supp. 1551, 1573 (S.D. Fla. 1992) (recognizing "the City's interest in keeping its parks and public areas clear of unsightly and unsafe items" but finding that that interest was "outweighed by the more immediate interest of the plaintiffs in not having their personal belongings destroyed" as a result the City's failure to follow its own written policy for handling property of homeless individuals.); *Kincaid v. City of Fresno*, Case No. 106CV-1445 OWW SMS, 2006 WL 3542732, at *37 (E.D. Cal. Dec. 8, 2006) (finding that the City's interest in protecting the public did not make reasonable the City's "wholesale seizure and immediate destruction of all Plaintiffs' possessions").

Case No. 3:23-cv-00257, *Smith v. Municipality of Anchorage*
Order re Pending Motions
Page 28 of 39

The ordinance codified at AMC § 15.20.020 serves these government interests while providing procedural safeguards to accommodate the interests of homeless individuals in retaining their personal property. The Municipality's policy differs markedly from the City of Los Angeles's policy that provided for the immediate abatement and destruction of property without any prior notice at issue in *Lavan*. Unlike that policy, AMC § 15.20.020 provides for pre-deprivation notice of the abatement action, an opportunity to appeal the abatement, and storage of belongings if an appeal is taken.

The Court recognizes the importance to Mr. Smith of the belongings allegedly seized and destroyed by the Municipality—including his tent, sleeping bag, asthma inhaler medication, tools for work, and his deceased mothers' ashes.[101] But Mr. Smith acknowledges in his Amended Complaint that his abated campsite was on public property and that he received 10 days' notice of the challenged abatement action.[102] He does not dispute that the notice provided by the Municipality informed him of the consequences of leaving his property in the

---

[101] Docket 12-1 at 5–6; *see Lavan*, 693 F.3d at 1032 ("For many of us, the loss of our personal effects may pose a minor inconvenience. However, . . . the loss can be devastating for the homeless."); *Pottinger*, 810 F. Supp. at 1559 ("[A] homeless person's personal property is generally all he owns; therefore, while it may look like 'junk' to some people, its value should not be discounted." (citation omitted)).

[102] Docket 12-1 at 4–6; *see* Docket 12-1 at 6 (alleging "the sweeps weren't just about clearing public property").

abatement area after the close of the notice period (destruction of the property as waste) pursuant to AMC § 15.20.020.[103]  Additionally,  Mr. Smith does not allege that the procedural protections available to him under the Municipal Code—including a temporary stay of the abatement pending an appeal to the Alaska superior court and storage of his property during that appeal—were unavailable to him.  Instead, he challenges the abatement of his campsite "pursuant to AMC § 15.20.020."[104]  Taking the allegations in the Amended Complaint as true, the Court concludes that Mr. Smith has not plausibly alleged that the Municipality's abatement procedures as applied to him violate the Fourth Amendment.

## 2.  Fourteenth Amendment

The Due Process Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law."[105]  "The essence of due process is the requirement that a person in jeopardy of serious loss be given notice of the case against him and opportunity to meet it."[106]  The type of notice and opportunity required depends on the private

---

[103] Docket 12-1 at 4-5; AMC § 15.20.020.B.15.b.v.B ("At the expiration of the notice period any personal property in the zone may be disposed of as waste.").

[104] Docket 12-1 at 7.

[105] U.S. Const. amend. XIV, § 1.

[106] *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976) (internal quotation marks and citation omitted).

and governmental interests that are affected. To determine if procedural due process requirements have been met, courts consider the following three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[107]

The Municipality asserts that its abatement procedures comport with due process for largely the same reasons that it asserts that those procedures do not violate the Fourth Amendment. Specifically, the Municipality asserts that Mr. Smith abandoned his interest in his personal property by leaving it in the abatement zone after receiving notice of the abatement, and, alternatively, that it provided Mr. Smith with sufficient procedures to minimize the risk of erroneous deprivation of Mr. Smith's property in light of the Municipality's interest in promoting public health, the environment, public safety, and public use of public property through the abatement of prohibited camps.[108]

Mr. Smith responds that "Defendant's 10-day notice is inadequate, particularly for homeless individuals who lack access to communication and may

---

[107] *Id.* at 335.

[108] Docket 20 at 37–40.

be struggling with mental health issues" and that "[t]he lack of a pre-deprivation hearing or any meaningful opportunity to contest the seizure further compounds the due process violation."[109]

Again, the Court need not reach the question of whether homeless individuals have "abandoned" property that remains in an area subject to abatement after a 10-day notice period because, even accepting that Mr. Smith has a substantial interest in retaining his personal property, the Court finds that the Municipality's abatement procedures provide the due process that the Constitution requires: namely, adequate notice (here, 10 days before the abatement commences) and an opportunity to protect one's personal property from destruction by relocating it or by seeking judicial review.

Mr. Smith has not shown that there is a "risk of an erroneous deprivation" through the procedures set forth in AMC § 15.20.020 and has not identified the probable value of any "substitute procedural safeguards."[110] AMC § 15.20.020.B.15 includes several safeguards to prevent the erroneous deprivation of property as a result of a campsite abatement. Among other things, the Municipality must provide written and oral notice at least 10 days before the

---

[109] Docket 24 at 7–8.

[110] *Mathews*, 424 U.S. at 335.

abatement stating the location of the prohibited camp, the reason it is prohibited, when abatement will occur, the means by which a camper may appeal to state court, the consequences of filing such an appeal (delay of abatement or storage of property), and how to reclaim any stored property after an abatement.[111] These procedures provide both an opportunity for campers to retain their possessions by removing them from the abatement zone and—contrary to Mr. Smith's assertions—a meaningful opportunity for campers to contest the abatement and prevent the destruction of their personal property.[112] Mr. Smith does not explain how a pre-abatement hearing would meaningfully reduce the risk of erroneous deprivation in light of the Municipality's existing procedures providing for storage and access to stored possessions if an appeal has been filed or noticed.[113] Nor does Mr. Smith allege that the Municipality did not comply with its code in its past abatement of Mr. Smith's campsite; Mr. Smith's Fourteenth Amendment claim, like

---

[111] *See* AMC § 15.20.020.B.15.a, b.iv, and b.v.

[112] *Mathews,* 424 U.S. at 333 ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552 (1965))).

[113] *See* AMC § 15.20.020.15.f, c; *Lavan,* 693 F.3d at 1032 ("[D]ue process requires law enforcement 'to take reasonable steps to give notice that the property has been taken so the owner can pursue available remedies for its return.'" (quoting *City of West Covina v. Perkins,* 525 U.S. 234, 240 (1999))).

his Fourth Amendment claim, challenges the seizure of his personal property "pursuant to AMC § 15.20.020."[114]

Mr. Smith asserts that the procedural safeguards in the municipal code are insufficient because many homeless individuals struggle with mental health issues or have limited access to communication. But the Court allowed through screening only claims by Mr. Smith in his individual capacity and noted that, as a pro se litigant, Mr. Smith may not represent other individuals.[115] Mr. Smith does not allege that he was affected by mental health issues or limited access to communication, and, in any event, does not explain why these challenges would render the notice provided by the Municipality inadequate.[116]

As explained above, the Municipality has a substantial interest in abating prohibited camps. Mr. Smith acknowledges in his opposition that "the government's interest in efficient encampment clearing" is "legitimate."[117] Abating prohibited camping helps ensure that parks, trails, playgrounds, open spaces, secluded woods, sidewalks, streets, and other rights of way can be used for the

---

[114] Docket 12-1 at 7.

[115] Docket 14; Docket 7 at 4–5.

[116] *Cf. Jones v. Flowers*, 547 U.S. 220, 230 (2006) (holding that the government must "consider unique information about an intended recipient regardless of whether a statutory scheme is reasonably calculated to provide notice in the ordinary case").

[117] Docket 24 at 4.

Case No. 3:23-cv-00257, *Smith v. Municipality of Anchorage*
Order re Pending Motions
Page 34 of 39

public purposes to which those properties have been dedicated.[118]  Courts in similar cases have found that requiring pre-abatement hearings "would certainly increase the administrative burden of ensuring that public property is available for use by the entire public, and . . . would add little procedural safeguard of preventing erroneous deprivation."[119]  This Court agrees and concludes that Mr. Smith has not plausibly alleged that the Municipality's abatement procedures as applied to him violate the Fourteenth Amendment.

### 3. Additional Unpled Claims

This Court allowed through initial screening only the two claims included in the Amended Complaint—one under the Fourth Amendment and the other under the Due Process Clause of the Fourteenth Amendment.[120]  Mr. Smith contends in his opposition brief that the Municipality's abatement procedures also violate the Eighth Amendment, the Supremacy Clause, and state laws regarding trespass and conversion.[121]  Mr. Smith did not raise these claims in the Amended Complaint,

---

[118] *See De-Occupy Honolulu*, 2013 WL 2285100, at *6 (recognizing that the government has "a substantial interest in ensuring that public property is available for use by everyone").

[119] *Id.*

[120] Docket 14 at 1; Docket 12-1.

[121] Docket 22 at 18–21.

and the Court declines to address the merits of these newly raised and improperly presented claims.

Because Mr. Smith fails to plausibly allege that the challenged abatement procedures violate the Constitution and alleges that the Municipality followed those procedures in carrying out the challenged abatement of his campsite, the Court dismisses Mr. Smith's claims for failure to state a claim.

## II.    Motion for Preliminary Injunction

In his Motion for Preliminary Injunction, Mr. Smith asks the Court to "[e]njoin the Municipality . . . from conducting any further abatements, dismantlements, or removals of homeless encampments within the Municipality's jurisdictional boundaries."[122]   The Municipality contends that Mr. Smith has not satisfied the requirements to obtain a preliminary injunction. Although the Municipality addresses each *Winter* factor, it primarily argues that Mr. Smith is not likely to succeed on the merits for the reasons set out in the Municipality's motion to dismiss.[123]

---

[122] Docket 25 at 19–20. In his motion, Mr. Smtih also requests monetary relief. But "[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). A preliminary injunction is not the proper avenue to obtain monetary relief. *See Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1249–50 (9th Cir. 2013) (holding that, for a preliminary injunction, plaintiff must establish that monetary damages are inadequate to compensate for the injury).

[123] Docket 33 at 9–18.

The first *Winter* factor—the likelihood of success on the merits—"is a threshold inquiry and is the most important factor."[124] Here, the Court has already found that Mr. Smith's Amended Complaint fails to state a claim upon which relief can be granted. Accordingly, Mr. Smith cannot show a likelihood success on the merits.[125] In light of this finding, the Court need not consider the other factors in the *Winter* analysis and denies the motion for a preliminary injunction.

### III. Leave to Amend

When a court dismisses a complaint pursuant to Rule 12(b)(6), it must then decide whether to grant leave to amend. Under Rule 15(a), a "court should freely give leave when justice so requires."[126] However, a court may deny leave to amend for reasons of "repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment."[127] Amendment may be considered futile when the claims lack a cognizable legal basis[128] or when "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and

---

[124] *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020).

[125] *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) ("Failure to plausibly allege a claim can bar a finding of likelihood of success on the merits in the preliminary injunction inquiry.").

[126] Fed. R. Civ. P. 15(a)(2).

[127] *Foman v. Davis,* 371 U.S. 178, 182 (1962).

[128] *See Shermoen v. United States*, 982 F.2d 1312, 1319 (9th Cir. 1992).

sufficient claim or defense."[129]  Any additional facts alleged must be "consistent with the challenged pleading" to cure the deficiency.[130]

The Court finds that amendment would be futile because any amendment consistent with the Amended Complaint would be "subject to dismissal" under Rule 12(b)(6) for the same reasons as the Amended Complaint is being dismissed.[131] Specifically, Mr. Smith's equitable relief claims—which seek a judgment declaring AMC § 15.20.020 unconstitutional and enjoining its enforcement[132]—are invalid as a matter of law based on the Court's conclusion that the Municipality's abatement procedures do not violate the Fourth or Fourteenth Amendment.  And there is no amendment consistent with the Amended Complaint that could cure Mr. Smith's damages claim because that claim, too, rests on the assertion that the municipal code itself is unlawful; Mr. Smith alleges that the Municipality entered his campsite and seized his personal property "pursuant to AMC § 15.20.020," so any new allegation that the Municipality deviated from its prescribed abatement procedures in a manner that rendered the abatement of Mr. Smith's campsite unconstitutional

---

[129] *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) (quoting *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)).

[130] *Or. Clinic, PC v. Fireman's Fund Ins. Co.*, 75 F.4th 1064, 1073 (9th Cir. 2023) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

[131] *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998).

[132] Docket 12-1 at 7.

would be inconsistent with the current pleading and could not proceed.[133] Accordingly, the Court finds that granting leave to file another amended complaint would be futile and the dismissal of this action is warranted.

## CONCLUSION

In light of the foregoing, IT IS ORDERED as follows:

1. The Municipality of Anchorage's Motion to Dismiss at Docket 20 is GRANTED. Mr. Smith's Amended Complaint is DISMISSED WITH PREJUDICE.

2. The Municipality's Motion for Order Requiring Plaintiff to State When Abatement Occurred at Docket 21 is DENIED as moot.

3. Mr. Smith's Motion to Clarify Date of Abatement at Docket 23 is DENIED.

4. Mr. Smith's Motion for Preliminary Injunction at Docket 25 is DENIED.

5. The Clerk of Court shall enter final judgment accordingly

DATED this 24th day of July, 2025 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[133] Docket 12-1 at 7.